462 A.2d 629

**NESHAMINY FEDERATION OF TEACHERS, Appellant,**

**v.**

**NESHAMINY SCHOOL DISTRICT, Appellee.**

Supreme Court of Pennsylvania.

Argued April 18, 1983.

Decided July 1, 1983.

Michael Brodie, Philadelphia, for appellant.

Miriam M. Reimel, Bristol, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

NIX, Justice.

In this appeal we are called upon to decide whether the discharge of a tenured professional employee, in accordance with the procedures prescribed in the Public School Code of 1949 [1] (Code) on the ground of "immorality" gives rise to a grievance under a collective bargaining agreement and is thus subject to mandatory arbitration under the Public Employee Relations Act (PERA).[2] Having concluded that such discharge is not a grievance arising out of the interpretation of the instant collective bargaining agreement (Agreement), we affirm the order of the Commonwealth Court, 59 Pa.Cmwlth. 63, 428 A.2d 1023 (1981), sustaining the dismissal.

### I.

Robert Hess, a tenured teacher of the Neshaminy School District (District), was convicted on March 16, 1978 by a jury in the Court of Common Pleas of Bucks County of simple and aggravated assault, reckless endangerment, terroristic threats and felonious restraint, and was sentenced to fifteen days' limited confinement.[3] In April 1978 Hess received written notice from the Neshaminy District Board of School Directors (Board) to appear at a Board hearing on April 15, 1978. Following hearings on that date and on April 22, 1978, in which Hess participated, the Board on June 23, 1978

1. Act of March 10, 1949, P.L. 30, art. I, § 101—art. XXVII, § 2701, *as amended,* 24 P.S. § 1–101—§ 27–2701 (1962 and Supp.1982–83).

2. Act of July 23, 1970, P.L. 563, No. 195, art. I, § 101—art. XXIII, § 2301, *as amended,* 43 P.S. §§ 1101.101–1101.2301 (Supp.1982–83).

3. The arbitrator's report indicated that at some time after 3:00 a.m. on the morning of September 25, 1977, Hess, who had been drinking heavily since early the previous evening, awakened his wife and got his shotgun. During a conversation which lasted an hour or more, Hess occasionally pointed the shotgun at his wife, and threatened to kill himself and "all the others." At the time Hess's six year old son by a previous marriage and Mrs. Hess's daughter and son-in-law were also in the house. The daughter and her husband escaped, using bedsheets to climb from a window, and summoned the police.

voted 6–3 to dismiss him. Formal dismissal was effected on June 27, 1978. Hess did not exercise his statutory right to appeal the Board's decision.

On August 18, 1978, Hess filed a demand for arbitration, pursuant to section 5–3 of the Agreement, alleging that he had been discharged without "just cause" and requesting reinstatement. On November 8, 1978 the District filed a complaint in equity against Hess, the Neshaminy Federation of Teachers (Federation) and the American Arbitration Association (Association) in the Court of Common Pleas of Bucks County. The District sought a temporary decree restraining the Association from holding a hearing on Hess's grievance. That request was denied.[4] The arbitrator, after conducting hearings, ruled that Hess's discharge was an arbitrable grievance pursuant to the Agreement and that Hess was dismissed without "just cause." Thus he ordered Hess's reinstatement.

The District appealed the arbitrator's award to the Court of Common Pleas of Bucks County. On February 29, 1980, that court granted the District's petition to set aside the award and upheld the dismissal, holding that while Hess's grievance was arbitrable, his dismissal by the Board for "immorality" was justified. On appeal from that decision, the Commonwealth Court rejected the arbitrability of the discharge and affirmed. This Court granted the Federation's petition for allowance of appeal.[5]

## II.

The policy of this Commonwealth not only favors but mandates the submission to arbitration of public employee grievances "arising out of the interpretation of the provisions of a collective bargaining agreement." 43 P.S. § 1101.903; *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 381 A.2d 849 (1977); *Board of Education of the School District of Phila-*

---

4. The merits of that complaint are still pending before the Court of Common Pleas.

5. Jurisdiction is vested in this Court pursuant to 42 Pa.C.S. § 724.

*delphia v. Philadelphia Federation of Teachers Local No. 3, AFT, AFL–CIO,* 464 Pa. 92, 346 A.2d 35 (1975) (hereinafter *Local No. 3, AFT*). The issue of the scope of the grievance arbitration procedure under a given agreement is determined, in the first instance, by the arbitrator. *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978); *Local 3, AFT, supra.* Nevertheless, whether or not a matter is properly within the jurisdiction of the arbitrator depends upon the intention of the parties as expressed in the terms of the agreement. *Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981); *County of Allegheny v. Allegheny County Prison Employees Independent Union, supra; Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977). *See also Independence Development, Inc. v. American Arbitration Association,* 460 Pa. 390, 333 A.2d 781 (1975); *Borough of Ambridge Water Authority v. Columbia,* 458 Pa. 546, 328 A.2d 498 (1974); *Women's Society for Prevention of Cruelty to Animals v. American Arbitration Association,* 440 Pa. 34, 269 A.2d 888 (1970). As we noted in *Leechburg Area School District v. Dale, supra,* the question of the arbitrability of a particular dispute

> requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court.

> *Id.* 492 Pa. at 520–521, 424 A.2d at 1312–1313.

Once it is determined the agreement encompasses the subject matter of the dispute, review of the arbitrator's finding is limited to whether the decision draws its essence from the collective bargaining agreement. This "essence" test is set forth in *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty, supra:*

> To state the matter more precisely, where a task of an arbitrator, PERA or otherwise, has been to determine the

intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the Judiciary if "the interpretation can in any rational way be derived from the agreement, *viewed in light of its language, its context, and any other indicia of the parties' intention...*" *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969).

*Id.* 473 Pa. at 593–594, 375 A.2d at 1275 (emphasis supplied).

For the reasons discussed below we are satisfied that the terms of the Agreement do not encompass the instant subject matter, i.e., dismissal of a tenured employee and for that reason we conclude that the arbitrator's award was properly rejected.

### A.

The crucial provisions in the instant controversy are sections 4–1, 4–2 and 4–8 of Article IV of the Agreement:

## ARTICLE IV

### RIGHT OF PROFESSIONAL EMPLOYEES

4–1 Nothing contained herein shall supersede the provisions of the School Laws of Pennsylvania, 1949, as amended, or other applicable laws and regulations.

4–2 An Employee will not be disciplined, reprimanded, reduced in rank, contractual compensation or contractual advantage without just cause. Any just [sic] actions asserted by the Board or any agent or representative thereof shall be subject to the grievance procedure herein described.

 * * * * * *

4–8 In conferences dealing with an unsatisfactory rating, demotion, suspension, or dismissal of an Employee, the Employee may invite a representative of the bargaining unit to be present. Except in an emergency, the Employ-

ee will be given at least 24 hours notice of the scheduling of such conference.

Our analysis must first focus upon whether section 4–2 intended to encompass "dismissal." If the agreement did not intend to encompass the question of dismissal, then such action is not arbitrable under the agreement and the arbitrator had no authority to address the question. *Sley System Garages v. Transport Workers Union of America, AFL–CIO, Local 700,* 406 Pa. 370, 178 A.2d 560 (1962).

■ It is obvious from a reading of section 4–2 that it does not employ the term "dismissal." Therefore we must determine whether the term "discipline" in section 4–2 of the Agreement was intended by the parties to include "dismissal." If this was their intention, dismissals would be "actions asserted by the Board ... subject to the grievance procedure" set forth in Article V of the Agreement. Such an interpretation is untenable for several reasons.

Initially, it is clear that the language of the Agreement lends no support to the argument that the parties intended the term "discipline" to include "dismissal" of a professional employee for any purpose. At the outset, the Agreement makes it clear the parties intended not to supersede or contravene the provisions of the Code. *See* section 4–1. The Code specifically discusses "termination of contract," § 11–1130,[6] "dismissals," § 11–1127[7] and "discharge," § 11–

**6.** Section 11–1130 provides:

> **§ 11–1130. Notice of discharge; procedure on decision favorable to employe**
>
> A written notice of any decision of the school directors discharging a professional employe, shall be sent by registered mail to such professional employee at his or her last known address within ten (10) days after such hearing is actually concluded.
>
> In all cases where the final decision is in favor of the professional employe, the charges made shall be physically expunged from the records of the board of school directors, but a complete official transcript of the records of the hearing shall be delivered to the one against whom the charges were made. In all such cases there shall be no abatement of salary or compensation.

**7.** Section 11–1127 provides:

> **§ 11–1127. Procedure on dismissals; charges; notice; hearing**
>
> Before any professional employee having attained a status of permanent tenure is dismissed by the board of school directors,

1122.[8] The Code does not employ the term "discipline," nor does it attempt to establish standards for its imposition. Thus, the use of the term "discipline" in the Agreement, consistent with the Agreement's stated intention of not superseding the Code, would appear to refer to actions other than "termination of contract," "dismissal" and/or "discharge," which are specifically provided for in the Code.

Further, it is highly significant that, while the term "dismissal" is not used in section 4–2, which defines matters subject to mandatory arbitration, that word *is* found in section 4–8, which gives an employee the right to have a union representative present at *"conferences dealing with . . . dismissal."* [9] (Emphasis supplied.) This explicit reference to "dismissal" in another section of the same Article refutes the contention that the parties intended "dismissal"

> such board of school directors shall furnish such professional employee with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing. A written notice signed by the president and attested by the secretary of the board shall be forwarded by registered mail to the professional employe setting forth the time and place when and where such professional employe will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges. Such hearing shall not be sooner than ten (10) nor more than fifteen (15) days after such written notice. At such hearing all testimony offered, including that of complainants and their witnesses, as well as that of the accused professional employee and his or her witnesses, shall be recorded by a competent disinterested public stenographer whose services shall be furnished by the school board at its expense. Any such hearing may be postponed, continued or adjourned.

**8.** Section 11–1122 provides in part:

> **§ 11–1122. Causes for termination of contract**
> The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, [and] persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe.

**9.** The right to the advice and representation of a Federation representative during the *grievance* procedure is conferred by section 5.1.1 of Article V of the Agreement.

to be subsumed by the term "discipline" in section 4–2. The significance of the omission of the term "dismissal" in section 4–2 is further highlighted by reading sections 4–2 and 4–8 together: The term "demotion" is employed in section 4–8, while a *precise* definition of that term appears in section 4–2, "reduc[tion] in rank, contractual compensation or contractual advantage." Demotion is the only other type of Board action against a professional employee which entitles that employee to the procedural safeguards prescribed in sections 1127–1132 of the Code.

Section 1151 provides:

**§ 11–1151. Salary increases; demotions**

The salary of any district superintendent, assistant district superintendent or other professional employe in any school district may be increased at any time during the term for which such person is employed, whenever the board of school directors of the district deems it necessary or advisable to do so, but there shall be no demotion of any professional employe, either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received, then *such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.*

24 P.S. § 11–1151 (Supp.1982–83) (Emphasis supplied). However, section 1151 of the Code differs from section 1122 of the Code in two important respects: (1) the hearing is at the employee's *option* and (2) *no standard* governing demotion is set forth in the Code. Thus, including demotion among the subjects of mandatory arbitration would not supersede or contravene any standard or procedure mandated by the Code. *Cf. Rylke v. Portage Area School District,* 473 Pa. 481, 375 A.2d 692 (1977). In contrast, an attempt to read "dismissal" as subsumed within the term "discipline" set forth in section 4–2 of the Agreement would contravene the mandatory provisions of sections 1122–1131 of the Code.

■ Moreover, the essential distinction which must be drawn between "dismissal" and "discipline" must be ascertained not by resorting to a dictionary but by tracing the interplay between the Code and the Agreement. This relationship is carefully recognized in the Agreement itself. Whereas the school board's power to dismiss a professional employee is explicitly granted by the Code, the board's broad disciplinary powers are implicit in the board's statutory responsibilities. *See Barth v. Philadelphia School District,* 393 Pa. 557, 143 A.2d 909 (1958); *Abington School District v. Yost,* 40 Pa.Commw. 312, 397 A.2d 453 (1979); *see generally* 24 P.S. § 2–211. Section 510 of the Code confers the power to promulgate rules and regulations governing the conduct of employees, including professional employees such as tenured teachers:

### § 5–510. Rules and regulations; safety patrols

The board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs and the conduct and deportment of all superintendents, teachers, and other appointees or employes during the time they are engaged in their duties to the district.

24 P.S. § 5–510 (Supp.1982–1983).

The only limitations upon this rulemaking power are that rules and regulations be "reasonable" and relate to on-the-job behavior.

The power to regulate conduct, of course, would be illusory absent a concomitant power to enforce rules through the imposition of some form of discipline. Yet the Code prescribes neither standards for imposing such discipline nor procedures to be employed in the disciplinary process. Thus an employee aggrieved by an unjust disciplinary action would have no recourse but the courts. A contractual provision such as section 4–2 fills this standardless void in the Code, protecting employees from unjust disciplinary actions by making grievances arising from such actions the subject of mandatory arbitration proceedings wherein a

"just cause" standard is determinative. Such provisions serve as a check on a school board's undefined discretionary authority as well as a desirable alternative to litigation. Thus provisions such as section 4–2 *complement* rather than supersede the Code, and further the purposes of PERA.

Once this definition of "discipline" is recognized, the function of section 4–2 within the Agreement and the statutory scheme becomes clear: The Code furnishes no criteria for the discipline, reprimand or demotion of a professional employee; section 4–2 establishes a "just cause" standard for such actions. Thus section 4–2 embodies a significant concession by the District with respect to a previously indefinite exercise of its authority.

Finally, if arbitration were permissible under the Agreement notwithstanding the Board's compliance with the statutory dismissal process, section 4–2 would supersede the Code in violation of the express terms of section 4–1 of the Agreement and of section 703 of PERA, 43 P.S. § 1101.703. If the adjudicative processes and jurisdictional grants mandated under the Code were not exclusive, a decision of the Board to dismiss a professional employee would be rendered meaningless, as would any decision adverse to the employee rendered by the Secretary of Education, the Court of Common Pleas or the appellate courts. Those decisions would not be binding upon the employee should the Board's initial decision remain perpetually subject to relitigation by an arbitrator applying a *different* standard. Such a result would offend all notions of finality. Moreover, this Commonwealth's goal, in providing for arbitration of labor grievances, of avoiding labor litigation, would be frustrated. The availability of parallel remedies, each with full appellate rights, would indefinitely delay the dismissal of any professional school employee. To interpret the Agreement as intending this absurd result, therefore, would be irrational. *See Unit Vending Corp. v. Lacas,* 410 Pa. 614, 190 A.2d 298 (1963); *Berke v. Bregman,* 406 Pa. 142, 176 A.2d 644 (1962).

## B.

■ Analysis of the relevant Code provisions concerning "dismissal" compels the conclusion that section 4–1 must be interpreted as excluding "dismissal" from mandatory arbitration. The phrase "the School Laws of Pennsylvania, 1949" in section 4–1 unquestionably refers to the Code. Because section 4–1 of the Agreement gives explicit preference to the Code, an understanding of the Code provisions affecting the terms and conditions of employment of professional employees is essential to the interpretation of section 4–2, on which our determination of the threshold issue of arbitrability rests. It also demonstrates the parties' intention to establish compatibility with the previous enactment and not to create a conflict. *See Rylke v. Portage Area School District, supra; Milberry v. Board of Education of School District of Philadelphia,* 467 Pa. 79, 354 A.2d 559 (1976).

■ The termination of the contract of a tenured professional school employee is *controlled* by the Code. *Brownsville Area School District v. Alberts,* 436 Pa. 429, 260 A.2d 765 (1970); *Flannery Appeal,* 406 Pa. 515, 178 A.2d 751 (1962). As a "professional employee" as defined in section 1101(1) of the Code, 24 P.S. § 11–1101(1), Hess was subject to the limited dismissal powers conferred upon the District by section 1122 of the Code. *See* footnote (8), *supra.* The language of section 1122 makes clear that a tenured professional employee may be dismissed *only* for the reasons set forth in that section. *See West Shore School District v. Bowman,* 48 Pa.Commw. 104, 409 A.2d 474 (1979); *New Castle Area School District v. Bair,* 28 Pa.Commw. 240, 368 A.2d 345 (1977).

■ In addition to the statutory limitation of the grounds for dismissal, the Code accords the tenured professional employee explicit procedural safeguards. 24 P.S. §§ 11–1126—11–1131. *See Milberry v. Board of Education*

*of School District of Philadelphia, supra.*[10] A valid dismissal of a tenured professional employee can be effected *only* if the school district acts in full compliance with these legislatively prescribed procedures. *See Commonwealth, Department of Education v. Jersey Shore Area School District,* 481 Pa. 356, 392 A.2d 1331 (1978); *Tyler v. Jefferson County-Du Bois Area Vocational Technical School,* 467 Pa. 595, 359 A.2d 761 (1976); *Jost v. Phoenixville Area School District,* 267 Pa.Super. 461, 406 A.2d 1133 (1979); *West Shore School District v. Bowman, supra; Board of School Directors of Centennial School District v. Secretary of Education,* 31 Pa.Commw. 307, 376 A.2d 302 (1977); *New Castle Area School District v. Bair, supra; Commonwealth, Department of Education v. Oxford Area School District,* 24 Pa.Commw. 421, 356 A.2d 857 (1976); *Pointek v. Elk Lake School District,* 26 Pa.Commw. 62, 360 A.2d 804 (1976); *Commonwealth, Department of Education v. Great Valley School District,* 23 Pa.Commw. 423, 352 A.2d 252 (1976); *Abington School District v. Pittenger,* 9 Pa.Commw. 62, 305 A.2d 382 (1973); *See also Jacobs v. Wilkes-Barre Township School District,* 355 Pa. 449, 50 A.2d 354 (1947). Thus the Board could not properly agree to pursue dismissals by a non-statutory method.

The Code's substantive limitations on the range of grounds for dismissal, together with its mandated procedural safeguards, are to be recognized as emoluments of ten-

**10.** Section 1127 requires the school board to serve the professional employee with a detailed written statement of charges and written notice to appear at a board hearing. 24 P.S. § 11–1127. The employee is to be given the opportunity to be heard in person or by counsel, and testimony is to be transcribed by an impartial stenographer at school district expense. *Id.* The hearing is to be public unless the employee prefers a closed proceeding. 24 P.S. § 11–1126. The school board is given subpoena power enforceable by contempt proceedings. 24 P.S. § 11–1128. After "full, impartial and unbiased consideration" of the charges, the Board is to vote by roll-call, a vote of two-thirds of its members being required to effect a dismissal. 24 P.S. § 11–1129. Written notice of the decision must be given within ten days of the hearing. 24 P.S. § 11–1130. The employee has the right to appeal, within thirty days of receipt of such notice, to the Secretary of Education. 24 P.S. § 11–1131; Act of July 23, 1969, P.L. 181, §§ 1–2, 71 P.S. §§ 1037–1038 (Supp.1982–83).

ured professional status. No such limitations or procedures have been prescribed by the Code in the case of other classes of employees subject to dismissal. Significantly, Article IV of the Agreement, entitled "Right of Professional Employees," explicitly provides that "[n]othing contained [t]herein shall supersede the School laws of Pennsylvania." In drafting Article IV, the parties must have been aware of the significant statutory rights afforded tenured professional employees by the Code. Thus it is proper to interpret that language in Article IV as intentionally incorporating the Code provisions concerning dismissal into the Agreement. We conclude, therefore, that the parties to the Agreement contemplated that dismissal of tenured professional employees would be governed by the applicable provisions of the Code, not the grievance procedure of the Agreement.

To hold otherwise would require the conclusion that the parties did, in fact, intend the Agreement to supersede the Code. Such an interpretation is untenable. Were dismissal subject to the grievance procedure, the Agreement's "just cause" standard would supplant the limited statutory grounds for dismissal. Likewise the Code's mandatory dismissal procedures would be discarded in favor of arbitration. These results would conflict with the express language of the Agreement itself. More importantly, as we indicated above, that construction would render the Agreement inconsistent with and in violation of the Code. In such case the arbitration provisions of the Agreement would be unenforceable, pursuant to section 703 of PERA, 43 P.S. § 1101.703, as to dismissals of professional employees.[11] *See Milberry v. Board of Education of School District of Philadelphia, supra; Pennsylvania Labor Relations Board v. State College Area*

11. Section 703 provides:
 **§ 1101.703 Implementation of provisions in violation of, or inconsistent with statutes or home rule charters**
 The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

*School District,* 461 Pa. 494, 337 A.2d 262 (1975). We will not render an interpretation of an agreement which is violative of existing law. *See Block v. Mylish,* 351 Pa. 611, 41 A.2d 731 (1945); *Rau v. Wilkes-Barre and Eastern R.R. Co.,* 311 Pa. 510, 167 A. 230 (1933); *State Line and Sullivan R.R. Co. v. Lehigh Valley R.R. Co.,* 277 Pa. 227, 120 A. 829 (1923).

## III.

In light of the above discussion we must conclude that the Board's dismissal of Mr. Hess was not an arbitrable action under the terms of the Agreement. Accordingly, the dismissal by the Board, which was not appealed, must be sustained.

The Order of the Commonwealth Court is affirmed.