563 A.2d 207

**In re Grievance Arbitration of Garnet Valley Service Personnel Association and Robert Redden.**

**GARNET VALLEY SERVICE PERSONNEL ASSOCIATION and Robert Redden, Appellants,**

**v.**

**GARNET VALLEY SCHOOL DISTRICT, Appellee.**

Commonwealth Court of Pennsylvania.

Argued March 10, 1989.

Decided July 26, 1989.

Reargument Denied Sept. 22, 1989.

Alexander A. DiSanti, Richard, DiSanti, Hamilton & Gallagher, Media, for appellants.

Steven E. Combs, Cramp, D'Iorio, McConchie & Forbes, P.C., Media, for appellee.

Before DOYLE and PALLADINO, JJ., and BARBIERI, Senior Judge.

DOYLE, Judge.

Before us for consideration is the appeal of Garnet Valley Service Personnel Association (Association) and Robert Redden (Redden) from an order of the Court of Common Pleas of Delaware County which granted the Garnet Valley School District's (District) petition to set aside an arbitrators award. The basic issue presented is whether an Act 195[1] arbitrator has jurisdiction in this case where the administrative procedures contained in the Public School Code[2] (Code) are also available to resolve the issue of

---

1. The Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.101 through § 1101.2301.
2. The Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 1–101 through § 26–2607.

Redden's discharge, and the Collective Bargaining Agreement (Agreement) appears to defer to the Code.

Redden was hired as a bus driver by the District in February 1986 and was at all times relevant to this case a member of the bargaining unit. On September 11, 1987, the school bus operated by Redden was involved in a collision with another vehicle. Redden claimed that a gear malfunction caused the accident but he was nevertheless cited by the Pennsylvania State Police, and convicted of failure to yield the right-of-way.

Redden was advised on September 14, 1987 that he was to be suspended without pay pending completion of an investigation. After completing its investigation, the District notified Redden by letter dated October 12, 1987, that it intended to recommend his discharge due to incompetence, neglect of duty and improper conduct pursuant to Section 514 of the Code, 24 P.S. § 5-514. The letter further stated that Redden had the right under Code procedure and the Local Agency Law, 2 Pa.C.S. §§ 551-554, 751-754, to a due process hearing before the School Board (Board). Such a hearing was never requested. A second letter dated November 5, 1987 advised Redden that the Board would hold a hearing on November 16, 1987 regarding his discharge. However, neither Redden nor his counsel appeared at the hearing. Thereafter, the Board voted at its regular November monthly meeting to terminate Redden's employment effective September 14, 1987 and so advised him by letter dated November 25, 1987. Redden did not pursue any appeal process of the Board's decision available to him under the Local Agency Law.

Redden did however, on October 21, 1987, file a grievance challenging his proposed termination. The grievance was denied at Levels I and II based on the language in the Agreement[3] which is the subject of dispute in the instant

3. The grievance procedure contained in the Agreement is divided into informal and formal procedures. The informal procedure applies prior to the filing of an official grievance, and consists of an attempt by the member of the bargaining unit to resolve the problem with the

case. No action was taken at Level III by agreement of the parties and the matter moved directly to arbitration. After a hearing, the arbitrator issued a written opinion which found first, that the grievance was arbitrable, and second, on the merits, reversed the District's discharge of Redden. The arbitrator ordered instead that Redden be reinstated, with full back pay, benefits, and seniority, but disciplined by a one-week suspension without pay. The District filed a petition in common pleas court to vacate the award which petition was granted by that court. This appeal followed.

Our scope of review of an arbitrator's decision is highly circumscribed and that decision will not be overturned if it draws its "essence" from the Collective Bargaining Agreement. *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981); *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977). We are confined under the essence test to a determination of whether the arbitrator's decision could rationally be derived from the Collective Bargaining Agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. *See Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989). In that case, the Supreme Court indicated that the "rational derivation" test is met if the decision "represents a reasonable interpretation of the labor agreement between the parties." *Id.*, 520 Pa. at 273, 553 A.2d at 951 (citations omitted).[4]

appropriate supervisor. The formal procedure consists of four levels. Level I mandates a conference between the supervisor and the grievant within five days of the filing of a formal grievance. Level II consists of an appeal to the superintendent of schools and a conference to review the results of the Level I conference. Level III allows appeal of the superintendent's decision to the Board followed by a hearing. Level IV provides that within twenty days following the Board's decision the Association may refer the grievance to binding arbitration as provided in Section 903 of Act 195, 43 P.S. § 1101.903.

4. This Court has recently decided two cases where the reasonableness of the arbitrator's interpretation of the Agreement was at issue. In *Mifflinburg Area Education Assoc., PSEA/NEA v. Mifflinburg Area School District*, 118 Pa. Commonwealth Ct. 328, 545 A.2d 419 (1988),

However, it is within the province of this Court to determine as a threshold issue whether the parties to the underlying dispute have agreed to submit that dispute to an arbitrator's jurisdiction. *See Neshaminy Federation of Teachers v. Neshaminy School District*, 501 Pa. 534, 462 A.2d 629 (1983). In *Neshaminy,* our Supreme Court addressed this issue as follows:

> The policy of this Commonwealth not only favors but mandates the submission to arbitration of public employee grievances 'arising out of the interpretation of the provisions of a collective bargaining agreement.' The issue of the scope of the grievance arbitration procedure under a given agreement is determined, in the first instance, by the arbitrator. Nevertheless, whether or not a matter is properly within the jurisdiction of the arbitrator depends upon the intention of the parties as expressed in the terms of the agreement. As we noted in [Leechburg], the question of the arbitrability of a particular dispute
>
> > requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court. Id. 492 Pa. at 520–521, 424 A.2d at 1312–1313.

Once it is determined that the agreement encompasses the subject matter of the dispute, review of the arbitrator's finding is limited to whether the decision draws its essence from the collective bargaining agreement.... *Neshaminy,*

we upheld as reasonable an arbitrator's interpretation of the term "discipline" as used in the collective bargaining agreement prohibiting the school district from disciplining an employee without just cause as also prohibiting dismissals without just cause.

We reached the opposite result however, in *Mifflin County School District v. Lutz,* 122 Pa.Commonwealth Ct. 112, 551 A.2d 396 (1988). In that case, we held that the collective bargaining agreement's exclusion from arbitration of teacher rating issues was not ambiguous and did not therefore require interpretation by an arbitrator.

501 Pa. at 539–540, 462 A.2d at 632 (citations omitted).[5]

Here, we are not concerned with ˙the underlying subject matter of the dispute, *i.e.,* the disciplinary dismissal of a nonprofessional employee. Rather our focus is on whether the parties to the Agreement have agreed to submit the issue of Redden's disciplinary dismissal to an arbitrator's jurisdiction. For the reasons discussed below, we are satisfied that the parties did not intend to submit Redden's dismissal to arbitration, and that the arbitrator therefore lacked authority to address that issue. Accordingly, we conclude that the common pleas court properly vacated the arbitrator's award.

Appendix F of the Collective Bargaining Agreement between the parties sets forth the grievance procedure to be

5. *Neshaminy* has since been partially overruled by an act of the General Assembly. *Neshaminy* held, *inter alia,* that a school district could not properly agree to pursue dismissals of tenured professional school employees by a nonstatutory method, *i.e.,* arbitration, but must instead act in full compliance with the legislatively prescribed procedures contained in Sections 1122 through 1131 of the Code, 24 P.S. §§ 11–1122 through 11–1131, which provided the exclusive procedures by which a dismissal could be challenged. In response to this holding, the General Assembly amended the Code by enacting Section 1133, added by Section 4 of the Act of June 29, 1984, P.L. 438, 24 P.S. § 11–1133, which states in pertinent part:

Nothing contained in sections 1121 through 1132 shall be construed to supersede or preempt a provision of a collective bargaining agreement in effect on July 23, 1970, or on any date subsequent thereto, negotiated by a school entity and an exclusive representative of the employes in accordance with the act of July 23, 1970 (P.L. 563, No. 195), known as the "Public Employe Relations Act," which agreement provides for the right of the exclusive representative to grieve and arbitrate the validity of a professional employe's termination for just cause or for the causes set forth in section 1122 of this act; however, no agreement shall prohibit the right of a professional employe from exercising his or her rights under the provisions of this act except as herein provided. . . .

However, that portion of *Neshaminy* regarding the power of the courts to review an arbitrator's jurisdiction remains the controlling law. *See Minersville Area School District v. Minersville Area School Service Personnel Association,* 102 Pa. Commonwealth Ct. 409, 518 A.2d 874 (1986), *petition for allowance of appeal denied,* 516 Pa. 644, 533 A.2d 715 (1987); *see also Mifflinburg,* 118 Pa. Commonwealth Ct. at 334 n. 8, 545 A.2d 422 n. 8 (*Neshaminy* legislatively overruled to some extent).

utilized in this type of case. Section I of Appendix F defines "grievance" as:

[A] claim by one or more members of the bargaining unit of a violation, misapplication, or misinterpretation of this agreement, administrative policy or that disciplinary action has been taken without just cause. *In cases involving disciplinary action, the parties agree that the grievance procedure shall not be utilized in situations where due process hearings are made available to a member of the bargaining unit pursuant to the provisions of the Pennsylvania School Code.* (Emphasis added.)

The arbitrator found the language regarding the Code in Section I of Appendix F to be "not unambiguous." He based this finding upon uncontroverted testimony by an Association representative that the language regarding the School Code was "lifted verbatim" from the District's *professional* employee agreement, which is separate and distinct from the *nonprofessional* employee agreement herein. As the arbitrator correctly noted, such language in a professional employee agreement would, by operation of law, encompass Sections 1121 through 1133 of the Code, 24 P.S. §§ 11–1121 through 11–1133, regarding, *inter alia*, discipline of professional employees. However, the only Code section which applies to nonprofessional employees and which provides due process procedures for discharges is Section 514, 24 P.S. § 5–514. That Section provides as follows:

The Board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employes or appointees, for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

The arbitrator stated that had the reference to the Code been limited to Section 514 or to the rights of nonprofessionals under the Code, he would have found Section I of Appendix F to be unambiguous. However, he found no

such limitation and, because of that, found two areas of confusion.

He found first that because negotiators for both sides knew of the generalized reference to the Code about to be placed in the Agreement but were not clear as to whether that reference encompassed only Sections 1121–1133 or included Section 514, it was unclear what the parties intended. The arbitrator found that it was "too much" to believe that the Association would exchange the right to arbitrate for a Board-conducted due process hearing. The second area of confusion found by the arbitrator was that the first sentence of Section I of Appendix F refers to a just cause standard, while the reference in the second sentence was to a due process standard. The arbitrator rejected the District's argument that just cause would be equated with due process, because the punctuation between the sentences was in the form of a period rather than some other form of punctuation indicating a relationship existed. He thus found that two different standards were indicated.

Having found these two areas of confusion, the arbitrator concluded that the language of Section I of Appendix F was "not unambiguous," and that Association members could elect either arbitration or the due process procedures in Section 514 of the Code for all disciplinary actions.

We cannot agree. The agreement at issue in this case applies *only* to nonprofessional employees of the District in the custodial/maintenance, food service and transportation departments. The only Code section which applies to nonprofessional employee disciplinary discharges wherein due process procedures are provided is Section 514. As such, the reference in Section I of Appendix F to the Code could only be to Section 514. We therefore find no ambiguity in that regard.

With regard to the tension found by the arbitrator between the "just cause" standard referenced in the first sentence of Section I of Appendix F and the "due process" standard referenced in the second sentence, we also find no ambiguity. Section 514 of the Code, in concert with the

Local Agency Law, provides for *procedural due process* in situations involving the dismissal of a nonprofessional employee. It does not, however, provide a *substantive* standard for the imposition of such discipline. Instead, this *substantive* standard is provided by the language of Section 1 of Appendix F which makes disciplinary action subject to a just cause standard. As such, just cause for dismissal under the language of Section 1 of Appendix F is limited to those causes specified in Section 514, and, the district may not dismiss an employee for just cause thereunder without affording the procedural due process mandated by that Section. It is clear, therefore, that the ambiguity found by the arbitrator does not exist.

Further, the arbitrator appears to have overlooked the language contained in Section IV of Appendix A of the Agreement. Entitled "Dismissal Procedure," this section provides that when a member of the bargaining unit is recommended for dismissal by the District, the District *"shall* schedule a hearing on the matter with the Board or a committee thereof." (Emphasis added.) The negotiation by the parties of a mandatory due process hearing into the Agreement itself further indicates and emphasizes that the parties clearly intended Section 514 of the Code to control in cases of dismissal of a nonprofessional employee.

Before this Court, Redden and the Association present additional arguments to the effect that the language contained in Section 1 of Appendix F is either ambiguous, or contrary to statute or case law. They first argue that the first sentence of Section 1 of Appendix F, when read together with Section IV(D) of Appendix F (providing that binding arbitration is the final step of the grievance procedure) is alone sufficient to require a finding that Redden's dismissal was arbitrable. However, the argument ignores the second sentence of Section 1 of Appendix F which excludes disciplinary action from the definition of grievance. Thus, Redden's dismissal was not a grievance as defined in the Agreement and was therefore not subject to the grievance procedure.

Redden and the Association next argue that Redden's dismissal is arbitrable because Section 903 of Act 195, 43 P.S. § 1101.903, mandates that *all* collective bargaining agreements provide for binding arbitration as the ultimate form of resolution of *all* disputes, and cite as support for that proposition *Williamsport Area Community College v. Williamsport Area Community College Education Association*, 58 Pa. Commonwealth Ct. 256, 427 A.2d 754 (1981). *Williamsport* clearly does not offer Redden and the Association any support. In that case, we decided merely that a provision in a collective bargaining agreement which prohibited an arbitrator from determining questions of law was violative of Act 195.[6]

The third alternative argument presented by Redden and the Association is that the statutory savings clause contained in Section IV of the introduction of the Agreement renders disputes otherwise resolvable by way of statutory remedy subject to binding arbitration as an alternative remedy,[7] and they cite *Greater Johnstown Area Vo-Tech School v. Greater Johnstown Area Vo-Tech Education Assoc.*, 69 Pa. Commonwealth Ct. 208, 450 A.2d 787 (1982), as support. In that case, we held in view of the statutory

6. Apart from *Williamsport*, an argument that arbitration is mandatory in all cases is inconsistent with recent statutory and case law. For example, Section 1133 of the Code provides that in cases of discharge, professional employees may elect to pursue due process procedures under either the Code or the grievance and arbitration provisions of the Collective Bargaining Agreement, but not both. Further, by their holdings that the courts have the ability to review as a threshold issue whether or not a dispute between parties is encompassed within a collective bargaining agreement, both *Neshaminy* and *Leechburg* embrace the concept that the parties may *agree* to resolve some disputes by means other than arbitration. We therefore find Redden's and the Association's interpretation of Section 903 of Act 195 to be unpersuasive.

7. Section IV of the Introduction provides that:
Nothing contained herein shall be construed to deny or restrict to any employee, or to the Board, or to the District such rights as he/she/it may have under the Public School Code of 1949 as amended, or the Public Employees' Bargaining Act (Act 195), or other applicable laws and regulations. The rights granted to employees hereunder shall be deemed to be in addition to those provided elsewhere.

savings clause therein, which incorporated the Code into the collective bargaining agreement, that the parties intended to allow an arbitrator to decide whether the school *had complied with the Code* in suspending its professional employees. Here, the issue is whether or not the parties have agreed to *submit the merits* of Redden's dismissal to an arbitrator. Further, the plain language of the Agreement in this case provides that on dismissal Redden's rights under the Agreement were limited to those contained in the Code. As such this argument is unpersuasive.

Redden's and the Association's final argument is that the order of the common pleas court which vacated the arbitrator's award is in conflict with our decision in *Mifflinburg*. They contend that the trial court's stated basis for distinguishing *Mifflinburg* is nonexistent. In its opinion, the common pleas court found that the arbitrator did not have jurisdiction to address Redden's dismissal because the language of the Agreement was not ambiguous, and therefore did not require an arbitrator's interpretation.

In *Mifflinburg*, we held that the trial court erred in vacating an arbitrator's award because that award drew its essence from the collective bargaining agreement. Here, the award did not draw its essence from the agreement, and on that basis is in accord with our decision in *Mifflin County*, wherein we held that the language of the collective bargaining agreement was not ambiguous and therefore did not require an arbitrator's interpretation. *See supra* note 4. As such, we find this argument unpersuasive.

Accordingly, based on the above, we hold that the subject matter of the instant case, arbitration of the disciplinary dismissal of a nonprofessional employee, was specifically excluded from the Agreement by the language of Section I of Appendix F, and that the arbitrator was without jurisdiction, and thus had no authority, to address the dismissal of Redden. Thus, we affirm the order of the common pleas court which granted the District's petition to set aside the arbitrator's award.

## ORDER

NOW, July 26, 1989, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is affirmed.