WATTSBURG AREA SCHOOL
DISTRICT, Appellant

v.

WATTSBURG EDUCATION
ASSOCIATION,
PSEA/NEA.

No. 2088 C.D.2004.

Commonwealth Court of Pennsylvania.

Argued May 3, 2005.
Decided June 16, 2005.
Ordered Published Sept. 29, 2005.

Richard W. Perhacs, Erie, for appellant.

Richard S. McEwen, Edinboro, for appellee.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Wattsburg Area School District (School District) appeals from the order of the Court of Common Pleas of Erie County denying its petition to vacate the arbitration award granting in part and denying in part the grievance filed by the Wattsburg Education Association, PSEA/NEA

(Association) on behalf of William Bewley (Bewley). The School District contends that the trial court erred (1) in concluding that the arbitrator's determination of arbitrability of the grievance was rationally derived from the parties' Collective Bargaining Agreement (CBA); (2) in concluding that Bewley could have chosen a hearing before the School Board or grievance arbitration; and (3) in refusing to vacate the requirement for the School District to accommodate Bewley while waiting for his teaching credentials.

In February 1993 the Department of Education (Department) issued Bewley an Instructional I Certificate (teaching certificate) in the areas of industrial arts/technology education after his graduation from college. Bewley began his employment with the School District in 1997–1998 as a seventh and eighth grade industrial arts technology education teacher. The Instructional I Certificate is valid for only six service years and must be converted to an Instructional II Certificate (permanent certificate) prior to expiration. *See* 22 Pa. Code § 49.82. To obtain an Instructional II Certificate, an applicant must, *inter alia,* complete twenty-four credit hours of collegiate study. *See* 22 Pa.Code § 49.83. A failure to meet these requirements results in the loss of the ability to teach in Pennsylvania.

In August 2001 the School District's Superintendent, Frank Bova, reminded Bewley to obtain permanent certification because the District's records showed that he had not completed the required twenty-four credit hours. On August 1, 2002, the Department informed Bova that Bewley had used five and one-half school service years on the Instructional I Certificate with one-half service year left before its expiration. In a letter dated August 28, 2002, Bova informed Bewley that he must obtain his Instructional II Certificate by

January 16, 2003 to remain employed. Bewley began taking the required courses for an Instructional II Certificate, and by mid-December 2002 he completed class work at Edinboro University and an approved correspondence course through Indiana Wesleyan University. On January 10, 2003, Bewley informed Bova that he had completed the required courses and was waiting for a final grade. On January 16, 2003, Bova denied Bewley's request for a leave of absence.

In a letter dated January 16, 2003, the School District suspended Bewley without pay for his failure to obtain an Instructional II Certificate pending a dismissal hearing before the School Board. Eight days later the Association's representative informed the School District that Bewley would contest the action through grievance and arbitration procedures under the CBA. The School District, however, proceeded to a dismissal hearing on January 28, 2003 without Bewley's attendance, and after the hearing the School Board sustained the suspension and then terminated Bewley's employment. The Association filed the grievance challenging denial of Bewley's request for a leave of absence and contesting the disciplinary actions taken. The Department subsequently issued to Bewley an Instructional II Certificate retroactive to February 1, 2003, in accordance with its practices, after receiving all required paperwork and credentials on February 24.

A grievance arbitration hearing was held on October 3, 2003 before Arbitrator Robert A. Creo.[1] The School District participated but claimed that the grievance was not arbitrable under Article 5, Section I, which provides:

> No professional employee will be disciplined, discharged or reduced in rank or compensation without just cause. *Any such action asserted by the Board or any agent or representative thereof shall be subject to the grievance procedure of this Agreement, provided, however, that the discharge of a professional employee shall not be subject to the grievance or arbitration procedures of this Agreement so long as the teacher tenure law is in existence* and provided, further, that the discharge of a beginning teacher during the first two years of employment shall not be subject to the grievance or arbitration procedures of this Agreement. (Emphasis added.)

The arbitrator concluded, however, that the denial of Bewley's request for a leave of absence, the length of his suspension and discharge were arbitrable.

The arbitrator found that before suspending Bewley, the School District knew that he had completed all of the required courses and would obtain his permanent certification retroactive to February 1, 2003; that Bewley's own indifference and/or sloth contributed to his situation; that the School District acted improperly in failing to accommodate Bewley in some manner; and that it would have been appropriate for the School District to remove Bewley for the entire semester to have consistency in the classroom. The arbitrator found no just cause to discharge Bewley but just cause to remove him from the classroom without pay pending his compliance with all technical requirements for an Instructional II Certificate. The arbitrator accordingly granted in part and denied in part the grievance, suspended Bewley without pay for one academic year for his

1. The arbitrator listed the following issues: whether the School District violated the CBA by failing to grant Bewley a leave of absence and suspending him; whether his discharge was arbitrable; if so, whether just cause existed for discharge; and if not, what should be the remedy.

failure to timely maintain the required certification and reinstated him to his former position effective the start of the second semester of the 2003–2004 school year.

The School District filed a petition to vacate the arbitration award, contending that Bewley's discharge was not arbitrable and that the award failed to draw its essence from the CBA. The trial court denied the petition, concluding that Bewley had an option of either proceeding with a hearing before the School Board or utilizing the grievance and arbitration procedures under the teacher tenure law referred to in Article 5, Section 1 of the CBA and that the arbitrator's determination of arbitrability and the award drew their essence from the CBA.

 Judicial review of an arbitration award under the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301, is governed by the "essence test" adopted in *Community College of Beaver County v. Community College of Beaver County, Soc'y of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977) (whether the award draws its essence from the CBA). The court must conduct a two-prong analysis:

> First, the court shall determine if the issue as properly defined is within the terms of the [CBA]. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the [CBA]. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the [CBA].

*State System of Higher Education (Cheyney University) v. State College University Professional Ass'n (PSEA–NEA),* 560 Pa. 135, 150, 743 A.2d 405, 413 (1999). Strict adherence to the essence test is mandated by the Commonwealth's strong preference for swift and efficient means of settling disputes arising under the CBA. *Office of the Attorney General v. Council 13, American Federation of State, County & Municipal Employees, AFL–CIO,* 577 Pa. 257, 844 A.2d 1217 (2004).

 The School District argues that the arbitrator's determination as to the arbitrability of Bewley's discharge is not rationally derived from the CBA because Article 5, Section 1 represents a clear and unambiguous expression of the parties' intention to exclude disputes arising out of discharge of a professional employee who is subject to the teacher tenure law. *See* Sections 1121 through 1133 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 11–1121–11–1133. It is well established that the arbitrator has sole jurisdiction to decide the arbitrability of an issue in the first instance. *Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 499 Pa. 62, 451 A.2d 671 (1982); *Chester Upland School District v. McLaughlin,* 655 A.2d 621 (Pa.Cmwlth. 1995), *aff'd,* 544 Pa. 199, 675 A.2d 1211 (1996). Moreover, the limited judicial review under the essence test applies not only to an arbitration award but also to the arbitrator's determination of his or her jurisdiction.

 When an arbitrator interprets the CBA, the arbitrator decides a factual question regarding the parties' intent. *See Williamsport Area School District v. Williamsport Education Ass'n,* 686 A.2d 885 (Pa.Cmwlth.1996). To support the arbitrability of Bewley's discharge, the arbitrator stated:

> The first sentence of the [CBA] Section 5 Discipline states, 'no professional em-

ployee will be disciplined, discharged or reduced in rank or compensation without just cause.' This sentence clearly references a 'discharge.' The following sentence, exempting it from grievance procedure, makes little sense as written and is not clear and unambiguous. It talks about a beginning teacher, which language would be unnecessary if it had the application proposed by the District that *no* teacher could arbitrate their discharge. Inclusion of the word 'discharge' in the first sentence is inconsistent with the District's position since just cause is known to be interpreted and implied via the arbitration process.

Arbitrator's Opinion and Award, p. 37 (emphasis in original). The fact that the CBA does not define "just cause" is sufficient in and of itself to find that the parties intended to have the arbitrator interpret its terms.[2] *See Office of Attorney General.*

Further, the arbitration of disputes or grievances arising out of an interpretation of the CBA is mandatory under Section 903 of PERA, 43 P.S. § 1101.903. Section 1133 of the School Code, added by Section 4 of the Act of June 29, 1984, P.L. 438, 24 P.S. § 11–1133, provides in relevant part:

> Nothing contained in sections 1121 through 1132 [the teacher tenure provisions] shall be construed to supersede or preempt a provision of a[CBA] . . . negotiated by a school entity and an exclusive representative of the employes in accordance with . . . the 'Public Employe Relations Act,' which agreement provides for the right of the exclusive representative to grieve and arbitrate the validity of a professional employe's

termination for just cause or for the causes set forth in section 1122 of this act; however, no agreement shall prohibit the right of a professional employe from exercising his or her rights under the provisions of this act except as herein provided. . . . *Professional employes shall have the right to file a grievance under the [CBA] or request a hearing pursuant to section 1121 through 1132, but not both.* (Emphasis added.)

In its January 16, 2003 notice advising Bewley of the procedures to be followed to challenge its action, the School District stated:

> Pursuant to 24 P.S. § [11–]1133 of the School Code, and the relevant provisions of the [CBA], you have the right to elect between a school board hearing . . . or filing a grievance and having your discharge decided by an arbitrator; but you do not have the right to both. If you choose to exercise your right to a school board hearing, any provision of the [CBA] relative to grievances or arbitration shall be void. If you choose to exercise your rights to grievance and arbitration, your right to a school board hearing will be extinguished.

■ Bewley chose to challenge the School District's disciplinary actions through the grievance and arbitration procedures under the CBA, and the School District's own notice further supports the arbitrator's interpretation that a discharge of a professional employee is arbitrable under Article 5, Section 1. Because the arbitrator's determination of arbitrability was based upon the parties' intent as dis-

---

**2.** Although the arbitrator did not mention the teacher tenure law to support the arbitrability of the discharge as the School District points out, the provisions of the teacher tenure law are clearly applicable under the plain language of Article 5, Section 1. *See American Federation of State, County & Municipal Em-* *ployees, District Council 88, AFL–CIO v. City of Reading,* 130 Pa.Cmwlth. 575, 568 A.2d 1352 (1990) (the nebulous rationale of the arbitrator is not a basis for finding that the award failed to rationally draw its essence from the agreement).

cerned from the express language in Article 5, Section 1, the arbitrator's determination drew its essence from the CBA. If the School District disagrees with the arbitrator's interpretation, the CBA "can be renegotiated to reflect the 'true' intention" of the School District. *Danville Area School District v. Danville Area Education Ass'n, PSEA/NEA*, 562 Pa. 238, 252, 754 A.2d 1255, 1262 (2000).

The School District relies on *Garnet Valley Service Personnel Ass'n v. Garnet Valley School District*, 128 Pa.Cmwlth. 182, 563 A.2d 207 (1989), where the question before the Court was whether the parties had agreed to submit the issue of the nonprofessional bus driver employee's dismissal to the arbitrator's jurisdiction. The parties' agreement provided that the grievance procedure shall not be utilized where due process hearings were available pursuant to the School Code, i.e., Section 514, 24 P.S. § 5–514, which set forth due process procedures for dismissed nonprofessional employees. The arbitrator found the employee's grievance to be arbitrable after determining that it was not clear from the agreement what the parties intended in regard to the employee's rights to arbitrate or proceed to a due process hearing under the School Code and that references in Section I, Appendix F of the agreement to both a just cause and a due process standard was confusing. The arbitrator concluded that the language in Section I was "not unambiguous." This Court disagreed after concluding that no ambiguity existed in the agreement and that there was no tension between the just cause and due process standards provided therein. Unlike in *Garnet Valley*, however, the case here involves the discharge of a *professional* employee governed by disciplinary procedures set forth in the teacher tenure law. Section 1133 of the School Code grants a discharged professional employee the option of filing a grievance or of re-questing a hearing before the School Board. *Garnet Valley*, consequently, is distinguishable.

■ The School District also argues that the arbitrator improperly required the School District to accommodate Bewley in some manner during the lapse in his certificate, such as with an unpaid leave of absence, based on the arbitrator's own personal notion of fairness rather than on terms of the CBA, which do not include such a requirement. The School District relies on the arbitrator's statement in his opinion that technical arguments and assertions of legal rights should be "brushed aside" for a few moments to view the case in light of its reality. Although the arbitrator made this statement, he nevertheless made the relevant findings based on the evidence presented, and the School District does not dispute the arbitrator's findings.

■ In setting aside the discharge of Bewley and suspending him without pay for one academic year, the arbitrator considered mitigating circumstances along with Bewley's own lack of diligence in meeting the certificate requirements. In this case, it is entirely rational for the arbitrator to interpret the undefined term "just cause" as permitting consideration of the mitigating circumstances. *Office of Attorney General*. As a result, the arbitrator may properly set aside a discharge and impose an appropriate penalty based on a consideration of mitigating circumstances where, as here, the CBA neither expressly reserves in the School District sole discretion to impose a penalty nor precludes the arbitrator's determination of a remedy. *See Blue Mountain School District v. Soister*, 758 A.2d 742 (Pa. Cmwlth.2000). The Court therefore concludes that the arbitrator's award is ra-

tionally derived from the CBA and accordingly affirms the trial court's order.

## ORDER

AND NOW, this 16th day of June, 2005, the order of the Court of Common Pleas of Erie County in the above-captioned matter is affirmed.