639 A.2d 853

**Clifford E. CARBAUGH and Carlton Jones, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD
(T.B. WOOD'S SONS COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 1993.

Decided March 9, 1994.

Daniel Stern, for petitioners.

Stacy L. Wilson, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

This is a consolidated appeal from orders of the Workmen's Compensation Appeal Board (Board) reversing decisions of the referee which granted Clifford E. Carbaugh's and Carlton Jones' (collectively, Claimants) reinstatement petitions and awarded benefits. We affirm in part and reverse in part.

On July 23, 1990, Claimants each filed petitions for reinstatement of compensation alleging that they sustained loss of wages because of work stoppage due to a legally sanctioned strike, which began on April 30, 1990. On April 29, 1990, the day before the strike, both Claimants were working light duty jobs. Jones was receiving his pre-injury wages and Carbaugh was receiving workers' compensation benefits for partial disability.[1] Claimants each testified that they received form letters from T.B. Wood's Sons Company (Employer) which invited them to return to work but failed to indicate that work within their then existing physical limitations was available. The letters were mailed certified, only Carbaugh accepted delivery but Jones admitted that he knew the contents because he had read others at the union hall. Both Claimants also testified that they were afraid for their safety if they crossed the picket lines. Carbaugh also testified that he joined in the picket lines and had been charged with making terroristic threats. Jones testified that he joined in the picketing for a short time but spent most of his time at the

---

1. Jones had never signed a supplemental agreement modifying his original benefits for temporary total disability. Carbaugh signed a supplemental agreement on March 24, 1989 for partial disability payments of $87.00 per week.

union hall because his injury prohibited him from standing for extended periods. Claimants both further testified that no attempt to return to work was made during the strike.

On May 13, 1990, the referee granted the reinstatement petitions and awarded benefits. Employer appealed and on February 19, 1993, the Board reversed the decision of the referee. Claimants appeal.

On appeal we are requested to address a number of issues. Specifically, we are asked to decide the following: 1) whether Employer sent Claimants legally sufficient notice to establish the availability of work under The Pennsylvania Workmen's Compensation Act (Act)[2]; 2) whether the Board erred in concluding that Claimants had the burden of proving that they made a reasonable effort to pursue the jobs offered by Employer; 3) whether a partially disabled worker who is separated from his employment due to a voluntary strike is entitled to an immediate resumption of full disability benefits under the Act, and alternatively whether the Board erred in ignoring Employer's unilateral cessation of payments in the absence of either a supplemental agreement for suspension or termination of benefits, a signed final receipt, or order by a referee.

█ We note that our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed and whether the record is supported by substantial evidence. *Archer v. Workmen's Compensation Appeal Board (General Motors)*, 138 Pa.Commonwealth Ct. 309, 587 A.2d 901 (1991).

Claimants argue that the Board erred as a matter of law in concluding that two form letters sent by Employer to Claimants in May and September of 1990, following the commencement of the strike, which invited Claimants to return to work, but which did not indicate that their light duty restrictions would be considered, were legally sufficient notice to establish the availability of work. We disagree.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

■ The employer has the burden of showing that an employee's condition has changed from one of total disability to one of partial disability in order to obtain a reduction in benefits. This burden is carried by showing that "other work is available to the claimant which he is capable of obtaining." *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 458, 246 A.2d 668, 674 (1968). Further, the requirements of the job made available to the claimant must be communicated to the claimant unless the requirements are already known by the claimant because he previously worked the job. *Braun Baking Company v. Workmen's Compensation Appeal Board*, 136 Pa.Commonwealth Ct. 499, 583 A.2d 860 (1990). We agree with the Board that the letters sent to Claimants constitute legally sufficient notice of the availability of work. The record reflects that the letters specifically indicated that there was work available to Claimants. Also, because Claimants had previously worked under conditions which took into account their partial disability, then according to *Braun*, they should have reasonably assumed that their same jobs were offered.

Claimants further assert that the Board erred as a matter of law in concluding that the employees had the burden of proving that they made a reasonable effort to pursue the jobs purportedly offered by the employer following the commencement of the strike and that their fears about crossing the picket line were either pretextual or immaterial.

■ The burden is on a claimant to show that he made a good faith effort to return to the work force when he is able, and his benefits can be modified for failure to follow up on referrals or for willfully sabotaging referrals. *Kachinski v. Workmen's Compensation Appeal Board*, 516 Pa. 240, 532 A.2d 374 (1987). Claimants argue that their fear of violence prevented them from crossing the picket lines and thus pursuing the jobs. We find that the record does not contain substantial competent evidence to support Claimants' contention and therefore they did not meet their burden.

Next Claimants argue that they are entitled to an immediate resumption of full disability benefits under the Act as

partially disabled workers who were separated from their employment due to a voluntary strike sanctioned by federal statute, and alternatively that the Board erred as a matter of law in ignoring Employer's unilateral cessation of payments in the absence of either a supplemental agreement to either suspend or terminate benefits, a signed final receipt, or order of a referee permitting a suspension.

In support of their position Claimants cite *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Company)*, 98 Pa.Commonwealth Ct. 56, 510 A.2d 896 (1986), *petition for allowance of appeal denied*, 514 Pa. 637, 522 A.2d 1106 (1987). *Latta*, however, can be distinguished on its facts from the present case in that there was a formalized Supplemental Agreement that claimant was disabled and claimant thereby presented sufficient evidence to establish that his disability continued and he was unable to return to his pre-injury job, whereas there was work available to Claimants in the instant case.

When examining a claim for reinstatement of workers' compensation benefits, disability is the controlling factor, not the existence of a strike. When a claimant seeks reinstatement of total disability benefits following a return to work with residual disability the claimant must show that his earning power is once again adversely affected by his disability, through no fault of his own, and that the disability which gave rise to the original claim continues. *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990). Claimants' predicament is separate and distinct from any work-related injury. To the contrary, the record is replete with admissions by Claimants that they had in fact returned to work prior to the strike. Although there was never any formal agreement memorializing that Jones had returned to work all parties agree he had returned to work at his pre-injury wage and had worked for five months prior to the strike. Carbaugh, at the time of the commencement of the strike, had been working for four months and had been receiving partial disability payments of $87.00.

Claimants further propose that because no agreements were formalized, which should have reflected that their benefits were suspended, they became entitled to an immediate resumption of benefits when they chose to honor the picket line. This suggestion ignores that "the purpose of workers' compensation is to provide benefits to employees who suffer work related injuries resulting in a loss of earnings." *United States Steel Corporation v. Workmen's Compensation Appeal Board*, 62 Pa.Commonwealth Ct. 502, 506, 437 A.2d 92, 94 (1981). The Board correctly concluded that the real reason Claimants did not continue working was that they supported the strike and correctly declared that where a claimant has returned to work and would have continued to work but for the strike, then benefits are due to claimant only on a modified or suspended basis according to the wages which would have been earned but for the strike. For some reason the Board misstated that Carbaugh returned to work at a wage greater than his time of injury wage. We can only surmise that Carbaugh's situation was confused with Jones'. In any event we must reverse the Board on this point because Carbaugh was receiving and is entitled to the continued receipt of his partial disability benefits.

Accordingly, the decision of the Board is affirmed in its treatment of Jones and reversed to the extent that it denied the reinstatement of Carbaugh's partial disability payments of $87.00.

### ORDER

AND NOW, to wit, this 9th day of March, 1994, the orders of the Workmen's Compensation Appeal Board at Nos. A92–1411 and A92–1546, dated February 19, 1993, are affirmed in part and reversed to the extent the reinstatement of partial disability payments to Clifford E. Carbaugh was denied. Partial disability payments of Mr. Carbaugh are reinstated.