**Shannon DARRALL, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (H.J. HEINZ COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 14, 2001.

Decided Feb. 27, 2002.

---

Joseph A. Fricker, Jr., Pittsburgh, for petitioner.

James S. Ehrman and Cynthia L. O'Donnell, Pittsburgh, for respondent.

Before PELLEGRINI, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

Shannon Darrall (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting Claimant's Claim Petition for a closed period and then suspending her benefits based on Claimant's ability to perform a light-duty job. We affirm in part and reverse in part the decision of the WCJ and remand this case for the reasons set forth below.

On February 1, 1999, H.J. Heinz Co. (Employer) filed a Notice of Workers' Compensation Denial (Notice of Denial) declining to pay Claimant workers' compensation benefits for a work-related injury that occurred on January 18, 1999 because it contended that Claimant's disability lasted less than seven days. However, the Notice of Denial did indicate that Employer would pay Claimant's reasonable, related and necessary medical expenses (Claimant's Exhibit No. 2). Thereafter, Claimant filed a Claim Petition alleging that, on January 18, 1999, she sustained a head and right ear injury that occurred when she was struck by a box kicker machine while working for Employer. Employer filed an Answer denying the allegations set forth in Claimant's Petition. Claimant also filed a Penalty Petition alleging that Employer violated the Workers' Compensation Act (Act)[1] by failing to investigate and pay her claim in accordance with Section 406.1 of the Act.[2]

On May 5, 1999, Employer sent Claimant's attorney a letter offering her several light-duty jobs, including the positions of filler, tag checker and vegetable inspector. Specifically, the letter stated that "[m]y sending you this letter is notice to your client that such jobs are available." In response, Claimant's attorney sent Employer's attorney a May 6, 1999 letter stating that Claimant "has done the tag checker position and is willing to accept a return to work at this position." The letter also stated that "I request that your client advise my client directly of her work schedule, with the understanding that accommodation will be made for physical therapy, testing, and medical treatment" (Claimant's Exhibit No. 9). However, Employer apparently never provided this information to Claimant and Claimant never did return to work at this position. The reasons why this occurred are unclear, although the May 13, 1999 status report of

---

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1041.4; 2501–2606.

2. Section 406.1 was added by the act of February 8, 1972, P.L. 25, and was amended by the act of July 2, 1993, P.L. 190, 77 P.S. § 717.1.

Thomas Bellay, who is a workers' compensation case manager for Employer's insurance carrier, states: "JOB OFFER SENT TO CLT ON 5/5/99 WITHIN DR TALBOTT'S 4/14/99 LT DUTY WORK CAPS. JOBS INCLUDE FILLER, TAG CHECKER & SOUP FILLER OPERATOR. PAY RATE $12.285/HR 40 HRS/WK. PER DEFENSE ATTY, WHO DISCUSSED WITH CLMT ATTY, IT IS NOT ANTICIPATED THAT THE CLMT WILL RTW [return to work] AS SHE WANTS TO SEE HER OWN NEUROLOGIST ON 5/24/99" (Dep. of Bellay, Nov. 16, 1999, Volume II, Exhibit A, p. 6) (emphasis in original). Therefore, this case proceeded to litigation before the WCJ.

At the hearings before the WCJ, Claimant presented the testimony of Dr. Chen, who is board certified in otolaryngology and a co-director of the Hearing and Balance Center at Allegheny University Hospital where advanced hearing and balance tests take place. He first examined Claimant on March 16, 1999, who was suffering from hearing loss, dizziness and tinnitus. Dr. Chen performed an electronystagmography, or ENG, which is an objective test that measures inner ear and brain function. The saccade testing, where the patient visually tracks a strobe light, showed decreased latencies, which is a "central" finding. The rotational chair testing, where the patient is spun around and eye motions are recorded, was also abnormal. Dr. Chen concluded that these problems were caused by Claimant's work-related injury. Dr. Chen concluded that Claimant suffers from post-traumatic headache, post concussive syndrome, labyrinthine and brain stem concussion which are all directly related to her January 18, 1999 work injury (N.T. 10/12/99, pp. 7–19).

Claimant also presented the testimony of Antoin Munirji, M.D., a board certified neurosurgeon who examined her on May 25, 1999. Upon physical examination, Dr. Munirji discovered that Claimant experienced dizziness when he performed the Barrani maneuver (the patient is made to lie down and her head is tilted down at a thirty degree angle and to the right and left). When he performed this maneuver he also noticed nystagmus (involuntary jerky eye movements and an indication of vestibular dysfunction and labyrinthine dysfunction). Dr. Munirji also reviewed two tests conducted by Dr. Chen, which showed that Claimant's problems are "central", which refers to the brain or the brain stem, rather than peripheral. Based on his examination and these test results, Dr. Munirji diagnosed Claimant as suffering from a post traumatic brain stem concussion and labyrinthine concussion. He explained that the labyrinthine is the vestibular system of the inner ear, and problems with this area can cause dizziness, nausea and loss of balance. Dr. Munirji concluded that these problems are directly related to her work-related injury of January 18, 1999 (N.T. 6/18/99, pp. 12–19). As to Claimant's ability to work, Dr. Munirji stated that Claimant could perform light-duty work as along as she would not have to make any quick movements, which can precipitate dizzy spells and that she should also stay away from heavy equipment and heights (N.T. 6/18/99, pp. 22–23).

Following his deposition, Dr. Munirji was sent job descriptions of the following positions: labeler, filler operator, tag checker, filling line helper and vegetable trimmer. Dr. Munirji responded in a June 30, 1999 letter that he was not going to approve any of these jobs because they all require good static and dynamic balance for safety, "which is the biggest problem for this patient as she can lose her balance and fall" (Claimant's Exhibit No. 10).

Employer presented the testimony of John B. Talbott, M.D., a board certified

neurologist who examined Claimant on March 15, 1999 and April 14, 1999. Dr. Talbott turned Claimant's head to the right, which would maximally stimulate the right ear nerve, but Claimant did not experience any vertigo. Therefore, Dr. Talbott concluded that "there was no documentation of any finding or for that matter, any medical complaint that would confirm damage to the right inner ear or right peripheral labyrinthine nerve" (N.T. 11/10/99, p. 21). Claimant's optic discs were also flat, which indicated that there was no increased pressure on her brain. Claimant also had a narrow gait "which argues strongly against any clinically relevant balance disorder" (N.T. 11/10/99, p. 21). Dr. Talbott also opined that Claimant's symptoms were compatible with a labyrinthine concussion which would improve over time "but none of her physical examination was confirmatory" (N.T. 11/10/99, p. 22). As to Claimant's ability to work, Dr. Talbott concluded that Claimant was capable of returning to modified light-duty work. As to the specific jobs offered by Employer, the following exchange took place between Dr. Talbott and Employer's attorney:

Q: Doctor, you feel that she could do those jobs regardless of whether they required good balance?

A: Yes.

Q: And you feel that she can do those jobs regardless of whether there is a wet floor involved?

A: Yes.

Q: And you feel she could do those jobs regardless of whether or not they involved working in high places?

A: Yes.

Q: And you feel that she can do those jobs regardless of whether or not she would have to climb a ladder?

A: Yes.

Q: And you feel that she can do those jobs regardless of whether she has to work around heavy machinery?

A: Yes.

(N.T. 11/18/99, p. 104). Dr. Talbott also responded that he "was well aware of the fact that balance was a key issue here. And when I evaluated her for those jobs, I felt that she could perform them" (N.T. 11/18/99, p. 102).

Employer also presented the testimony of Brian Shuttleworth, who is the safety coordinator for Employer's Pittsburgh factory. He testified as to the light-duty jobs that had previously been offered to Claimant and stated that they were available to Claimant (N.T. 10/12/99, p. 33). Additionally, during this testimony, the WCJ asked Claimant's attorney whether Claimant was prepared to take any of the offered jobs and start the next day, and he responded that "I don't know .... if there [sic] a job that is available to start tomorrow. It has been said generally. I wrote a letter to counsel a number of months ago and said, tell my client when to show up, at what time and where because she was willing to try the vegetable job. I would have to say that that was before Doctor Munirji said, after he received the job description, and that was going to be too dangerous for her" (N.T. 10/12/99, p. 36).

Thereafter, the Judge, Claimant, Claimant's counsel and Employer's counsel took a tour of Employer's factory to assist the WCJ in determining whether Claimant could perform several light-duty jobs. After the tour, Mr. Shuttleworth testified concerning these light-duty jobs. As to how the "tag checker" position is performed, Mr. Shuttleworth explained that a forklift delivers a container filled with soup cans that have just been sterilized to the person performing the tag checker position. The tag checker then places a tag on the container (N.T. 12/03/99, pp. 13–14).

The purpose of the job is to determine whether the cans have been sterilized by checking to make sure the color of the tag changes, which occurs after the. can has been in the sterilizer (N.T. 12/03/99, p. 83).

Claimant also testified at the hearing after the plant tour. When asked by the Judge whether or not she could perform the tag checker position, she stated that "I was doing that at one point after the injury, and I said in my testimony that I was running back and forth to take the tags, put them in the baskets that were going in and get back to my desk so that I can get the ones that are coming out. The floors became slippery, and I turned, and with the quick turn, slippery floors. . . . I almost slipped into a forklift. You're running back and forth usually" (N.T. 12/03/99, p. 78). Claimant also testified that the floors are frequently wet in the area where this job is performed and that the person who performs this position is constantly moving. Claimant stated that she could not perform this job because it involves quick movements and is therefore too dangerous (N.T. 12/03/99, pp. 80–81).

By decision and order dated June 12, 2000, the WCJ accepted the testimony of Dr. Munirji and Dr. Chen as more credible that the testimony of Dr. Talbott with regard to the nature of Claimant's work-related injury. However, as to Claimant's ability to return to work, the WCJ found the deposition testimony of Dr. Talbott, who found that Claimant was capable of performing the light-duty jobs offered by Employer "more credible that Dr. Munirji's denial in his June 30, 1999 letter. I find the denial by Dr. Munirji to be inconsistent with his earlier testimony where he

indicated the claimant can do light duty work" (Finding of Fact No. 20). The WCJ further found that Claimant was capable of performing the tag checker position, as he found that, after his personal review of that position, it was the easiest of the light-duty jobs offered to Claimant. Accordingly, the WCJ granted Claimant total disability benefits for the closed period of February 19, 1999 until May 6, 1999, when Claimant first became aware of the offered light-duty employment.

In his decision, the WCJ also addressed the issue of the offer of light-duty work by an employer during the pendency of a claim petition. Claimant argued that offers of light-duty work during a claim petition are irrelevant because the employer has not yet recognized the injury and because the only issue in a claim petition proceeding is whether the claimant has sustained a compensable injury. In support of her argument, Claimant cited *Hill v. Workers' Compensation Appeal Board (Ballard, Spahr, Andrews and Ingersoll)*, 745 A.2d 56 (Pa.Cmwlth.1999), *petition for allowance of appeal granted*, 566 Pa. 670, 782 A.2d 550 (2001). The WCJ, relying on the Supreme Court's decision in *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 742 A.2d 649 (1999), concluded that Employer was permitted to offer Claimant light-duty jobs while the Claim Petition was still being litigated. Claimant appealed to the Board, which affirmed the decision of the WCJ. This appeal followed.[3]

On appeal, Claimant argues that: 1) the WCJ erred by suspending Claimant's benefits based on the alleged offer of a light-duty job during the pendency of the claim

---

3. This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

petition and that he should have applied this Court's holding in *Hill,* 2) the WCJ's decision that Claimant was capable of performing the offered job was not supported by substantial evidence, 3) the WCJ failed to make numerous essential findings with regard to whether Claimant can perform the tag checker position, 4) the WCJ erred by failing to grant the Penalty Petition and by failing to award Claimant unreasonable contest attorney's fees, 5) the WCJ failed to render a reasoned decision as required by Section 422(a) of the Act, and 6) the WCJ erred by suspending her benefits as of May 6, 1999 because she responded in good faith to the job offer and Employer never told her when to report for work.

With regard to whether an employer may offer a job to a claimant during the pendency of a claim petition, this Court stated in *Hill,* which was filed on December 23, 1999, that:

> It is axiomatic, and consonant with our established precedents defining a claimant's burden in a claim petition proceeding, that a claimant cannot have a duty or obligation to pursue a job offer until that claimant's disability or injury has been recognized as compensable by either Employer or a WCJ adjudication.

*Id.* at 59, 742 A.2d 649 (citations omitted). In making the *Hill* decision, this Court relied on our previous decision in *Smith v. Workers' Compensation Appeal Board (Saunder's House),* 732 A.2d 18 (Pa. Cmwlth.1999). Coincidentally, also on December 23, 1999, the date that this Court issued the *Hill* decision, the Supreme Court issued its decision in *Vista,* wherein it set forth in a footnote that:

> While this is a proceeding on a claim petition, as opposed to one on a petition to suspend, terminate or modify, as previously noted, the initial burden of proof associated with job availability is generally allocated to the employer in any

context once a loss of earnings capacity attributable to a work-related injury is demonstrated by the claimant. *See supra* note 7 and accompanying text. Because, unfortunately, some claims review proceedings are protracted, the status of both disability and earnings may change for a variety of reasons prior to the rendering of a decision. **Workers' compensation judges are vested with the authority to render adjudications on claim petitions which incorporate aspects of modification, suspension or termination where the evidence so indicates, without the necessity of formal petitions by the employer.** *See generally Connor v. Workmen's Compensation Appeal Board (Super Sucker, Inc.),* 155 Pa.Cmwlth. 102, 105, 624 A.2d 757, 758 (1993) (stating that, in proceedings on a claim petition, "[i]f the referee feels the evidence supports a finding of disability only for a closed period, he is free to make such a finding"), *appeal denied,* 535 Pa. 676, 636 A.2d 635 (1993). Thus, in assessing the relevant burdens in a claim proceeding, workers' compensation judges must apprehend the stage to which the proceedings have advanced.

*Id.* at 28, 742 A.2d at 658 n. 11 (emphasis added). Thereafter, on July 12, 2001, the Supreme Court granted the Petition for Allowance of Appeal in the *Hill* case. As noted above, the WCJ relied on the Supreme Court's opinion in *Vista* in determining that Employer could offer Claimant a light-duty job even though Claimant's work-related injury had not yet been accepted as compensable.

We also note that in *Martin v. Workers' Compensation Appeal Board (Red Rose Transit Authority),* 783 A.2d 384, 391 (Pa. Cmwlth.2001), this Court, citing *Vista,* noted that "[a] suspension of benefits is only appropriate where the claimant's earning power is no longer affected by the work-

related injury.... An employer is not absolved from liability for a termination employee unless the employer establishes a basis for a suspension (or termination) of benefits. **This is true even though the matter is before the WCJ on a claim petition rather than an employer's formal suspension petition.**" (citations omitted, emphasis added).

Although the Supreme Court in *Vista* did not expressly overrule this Court's holding in *Smith*, it is evident from the Supreme Court's decision that workers' compensation judges may grant claimants benefits for a closed period of time and then suspend benefits based on the offer of a job by the employer even though the claimant's claim for workers compensation benefits is before that workers' compensation judge only on a claim petition, as long as that job is available and within the Claimant's physical capabilities. Therefore, in the case *sub judice*, the WCJ did not err by relying on *Vista* in determining that Employer's offer of the tag checker position was allowable while the claim petition was still being litigated. Accordingly, we must now determine whether the WCJ erred by finding that the tag checker position was actually available and whether the Claimant was physically capable of performing this position.

For injuries occurring after June 24, 1996, which is the date that Act 57 was enacted, Section 306(b)(2) allows an employer to attempt to modify a claimant's benefits based on an earning power assessment. However, if the employer has a job available, Section 306(b)(3) provides that:

(3) If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following:

(i) The nature of the employe's physical condition or change of condition.

(ii) That the employe has an obligation to look for available employment.

(iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.

(iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.

77 P.S. § 512.

Additionally, the relevant regulation promulgated by the Department of Labor and Industry, Bureau of Workers' Compensation, provides that:

(a) For claims for injuries suffered on or after June 24, 1996, if a specific job vacancy exists within the usual employment area within this Commonwealth with the liable employer, which the employee is capable of performing, **the employer shall offer that job to the employee prior to seeking a modification or suspension of benefits based on earning power.**

(b) The employer's obligation to offer a specific job vacancy to the employee commences when the insurer provides the notice to the employee required by section 306(b)(3) of the act (77 P.S. § 512(b)(3)) and shall continue for 30 days or until the filing of a Petition for Modification or Suspension, whichever is longer. When an insurer files a Petition for Modification or Suspension which is not based upon a change in medical condition, the employer's obligation to offer a specific job vacancy commences at least 30 days prior to the filing of the petition.

(c) The employer's duty under subsections (a) and (b) may be satisfied if the

employer demonstrates facts which may include the following:

(1) The employee was notified of a job vacancy and failed to respond.

(2) A specific job vacancy was offered to the employee, which the employee refused.

(3) The employer offered a modified job to the employee, which the employee refused.

(4) No job vacancy exists within the usual employment area.

34 Pa.Code § 123.301 (emphasis added).

▮ This Court also notes that the principles regarding job availability under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987) are still viable. "In *Kachinski* it was held that an employer need not specify every aspect of every proposed job, but it did have to provide medical evidence describing the claimant's capabilities, vocational evidence classifying the level of exertion and a basic description of the job in question. **The Court deems the *Kachinski* standards to apply to job offers that are required to be made by an employer under the new provisions of Section 306(b)(2)."** *Hoover v. Workers' Compensation Appeal Board (Harris Masonry, Inc.)*, 783 A.2d 886, 890 (Pa.Cmwlth.2001) (emphasis added). However, when the employer offers the claimant a light-duty job that the claimant has previously performed, such specificity of job duties is not required. *Carbaugh v. Workmen's Compensation Appeal Board (T.B. Wood's Sons Company)*, 162 Pa.Cmwlth. 386, 639 A.2d 853 (1994). *See also Eidem v. Workers' Compensation Appeal Board (Gnaden Huetten Memorial Hospital)*, 560 Pa. 439, 445, 746 A.2d 101, 104 (2000) ("the referral should be reviewed in a common sense manner in order to determine whether a suitable position has been made available to the claimant.")

▮ Pursuant to *Kachinski*, the burden of proof is on the employer to show that the claimant's condition has changed and that the claimant has been referred to a then available job that he is capable of performing. The burden of proof then shifts to the claimant to demonstrate that he responded to the job offer in good faith. If the claimant does not exercise good faith, then his benefits can be modified. *Id.* at 252, 532 A.2d at 379.

▮ With regard to whether Claimant was physically capable of performing the position of tag checker, Dr. Talbott reviewed this job description and opined that Claimant could perform this job. The WCJ accepted this testimony as credible and we may not overturn his decision in this regard. In addition, the WCJ personally observed this position being performed during his tour of Employer's plant and was thus well aware of the physical requirements of this job when making his conclusion that Claimant was capable of performing this job. Dr. Talbott also reviewed the job description for the tag checker position and was well aware of the physical requirements for this job when making his conclusion that Claimant was physically capable of performing this job. Despite Claimant's assertions, the WCJ did not fail to make any necessary findings as to Claimant's ability to perform the tag checker position. Thus, the WCJ's decision in this regard is supported by substantial evidence.

Next, Claimant argues that Employer violated Section 406.1 of the Act by failing to issue a Notice of Compensation Payable and that she is, therefore, entitled to penalties and attorney's fees for an unreasonable contest. We disagree. Section 406.1 provides that:

(a) The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in section 407 or pursuant to a notice of temporary compensation payable as set forth in subsection (d), on forms prescribed by the department and furnished by the insurer.

. . . .

(c) If the insurer controverts the right to compensation it shall promptly notify the employe or his dependent, on a form prescribed by the department, stating the grounds upon which the right to compensation is controverted and shall forthwith furnish a copy or copies to the department.

77 P.S. § 717.1. Additionally, Section 401.1 of the Act, 77 P.S. § 710, provides that "[i]n any case in which compensation has not been timely paid, **or in which notice of denial of compensation has been given,** the department shall hear and determine all claim petitions for compensation filed by employes or their dependents." (emphasis added). Furthermore, Section 410 of the Act, 77 P.S. § 751, provides that: "[i]f, after any injury, the employer or his insurer and the employe or his dependent, concerned in any injury, shall fail to agree upon the facts thereof or the compensation due under this act, the employe or his dependents may present a claim petition for compensation to the department."

■ In this case, Employer and Claimant did not agree as to whether compensation was payable and Employer issued a Notice of Denial Pursuant to Section 401.1 disagreeing as to the length of Claimant's disability but agreeing to pay medical benefits. Then, Claimant filed a Claim Petition and this case proceeded to litigation before the WCJ pursuant to Section 410. We fail to see how the Employer acted improperly. Therefore, the WCJ did not err by denying Claimant's Claim Petition.

■ In further support of her argument, Claimant cites our decision in *Lemansky v. Workers' Compensation Appeal Board (Hagan Ice Cream Company)*, 738 A.2d 498 (Pa.Cmwlth.1999), where we held that an employer did not present a reasonable contest because it did not investigate the claimant's claim and issue a notice of compensation payable pursuant to Section 406.1. However, Claimant fails to recognize that in *Lemansky*, the employer did not issue *any* kind of notice at all. "Our reading of the Act indicates that indeed Employer does have an affirmative obligation to accept or deny the injury as work-related within twenty-one days of notice. 77 P.S. § 717.1. Once an employer elects to take no action and require the claimant to litigate the issue of compensability, it must then pay Claimant's attorney's fees unless it can prove that its contest was reasonable." *Id.* at 502. This case is distinguishable from *Lemansky*, as Employer did indeed take action by issuing a Notice of Denial in accordance with Section 406.1(c) of the Act. Therefore, Claimant's argument in this regard must fail.

Claimant also argues that the WCJ failed to issue a reasoned decision because he failed to discuss the testimony of Mr. Bellay and to make findings as to the reasonableness of Employer's contest. Essentially, Claimant contends that Employer's conduct in offering the light-duty job during the pendency of the Claim Petition was wrongful and that, for this reason, Employer's conduct, as testified to by Mr. Bellay, should have been discussed by the

WCJ. We disagree. Section 422(a) provides that:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

In the Discussion section of his decision, the WCJ thoroughly addresses the *Hill*, *Smith* and *Vista* cases and concludes that, based on the Supreme Court's holding in *Vista*, Employer was permitted to offer Claimant a job during the pendency of the Claim Petition. The WCJ's decision in this regard goes to the essence of whether Employer's conduct was reasonable, and his evaluation of this issue is thorough and well reasoned. Because of his decision to follow *Vista*, there was no reason to discuss the testimony of Mr. Bellay. Therefore, the WCJ's decision was in compliance with Section 422(a) of the Act.

■ Lastly, as to whether the tag checker position was offered to Claimant and actually available, a review of the record indicates that Claimant had performed the position of tag checker before and was thus well aware of the duties involved while performing that position. Thus, Employer was not required to send Claimant a specific job description for that position. *Carbaugh*. As to whether the job was actually offered to Claimant, Employer's May 5, 1999 letter to Claimant's attorney specifically informs Claimant that the position of tag checker was available and was being offered to Claimant. Additionally, the record indicates that Mr. Shuttleworth stated that this position was available and was being offered to Claimant. Furthermore, during the hearings the WCJ specifically asked Claimant's attorney for an affirmative response as to whether Claimant was going to accept the tag checker position, which he declined to give. Claimant was also present during a tour of Employer's facility, the purpose of which was to help determine which job Claimant could perform. However, given that the WCJ suspended Claimant's benefits as of May 6, 1999, our review is limited to determining whether the tag checker job was offered and available to Claimant as of that date and whether Claimant responded in good faith to that job offer. Claimant argues that Employer's failure to respond to her attorney's letter rendered the job unavailable. We agree.

■ As we stated in *Hoover*, the principles enunciated in *Kachinski* remain viable in post Act 57 cases when, as in this case, Employer offered Claimant one of its available jobs rather than conducting an earning power assessment under Section 306(b)(2). In this case, the tag checker position was offered to Claimant pursuant to the May 5, 1999 letter. Then, pursuant to *Kachinski*, the burden of proof shifted to Claimant to respond to that job offer in good faith. What this Court must determine is whether the response letter from Claimant's attorney, rather than an accep-

tance of the job by Claimant herself, is a good faith response to Employer's job offer. A review of the record indicates that it was. When Employer offered the job to Claimant by sending the letter to Claimant's attorney, Employer obviously recognized Claimant's attorney as having the authority from Claimant as the person to act as her agent with powers to commit to accepting a job on her behalf. Claimant's attorney stated in the letter responding to Employer's letter that Claimant would accept the position. However, Employer did not, as requested by Claimant's attorney, personally contact Claimant, or Claimant's attorney, and advise her when she should report for work as set forth in the response accepting the job offer.[4] This fact is especially important given that Claimant has worked for Employer in the past and has performed the job of tag checker. Therefore, the WCJ erred by suspending Claimant's benefits as of May 6, 1999, as Claimant responded in good faith to Employer's job offer and Employer failed to provide Claimant with the necessary information to allow her to begin the light-duty job. Accordingly, the decision of the WCJ in this regard must be reversed and this case must be remanded to the Board for further remand to the WCJ for a finding of fact as to whether Employer actually offered Claimant a job some time after May 5, 1999. If the WCJ finds that Employer did actually offer Claimant a job, then he must determine whether Claimant responded to that job offer in good faith and, consequently, whether Employer is entitled to a suspension of Claimant's benefits.

Accordingly, the order of the Board is affirmed in part and reversed in part and this case is remanded to the Board for further remand to the WCJ as set forth above.

### *ORDER*

AND NOW, February 27, 2002, the order of the Workers' Compensation Appeal Board docketed at A00–1765 and dated August 8, 2001 is hereby AFFIRMED in part and REVERSED in part and this case is REMANDED to the Board for further remand to the WCJ as set forth in the foregoing opinion.

Jurisdiction relinquished.

---

4. We recognize that the status report of Mr. Bellay indicates that sometime between Claimant's purported acceptance on May 6, 1999 and May 13, 1999, the date of the report, Claimant or her attorney indicated that Claimant wanted to see Dr. Munirji before deciding whether to return to work. However, the record is devoid of any statement by Claimant or her attorney regarding what happened between May 6, 1999 and May 13, 1999.