IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Riverside School District          :
                                      :
        v.                   :
                                        :   No. 159 C.D. 2021
Riverside Educational Association  :
REA-PSEA-NEA,                :   Submitted: June 23, 2022
               Appellant    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                   FILED: August 1, 2022

Riverside Educational Association, PSEA-NEA (Association) appeals the February 3, 2021 order of the Lackawanna County Common Pleas Court (trial court), granting Riverside School District's (District) motion to vacate an arbitration award (Award) on the basis the claim is not arbitrable pursuant to the collective bargaining agreement (CBA). For the reasons that follow, we reverse and remand to the trial court.

**Factual and Procedural History**

The relevant facts as found by the arbitrator are as follows.[1]

On May 17, 2016, the District and Association entered into a CBA effective September 1, 2013, through August 31, 2020. (Award at 3.) On July 1, 2016,

---

[1] "Under the essence test, the arbitrator's findings of fact are binding on the courts, and the reviewing court may not undertake any independent factual analysis." *Pennsylvania State System of Higher Education, Lock Haven University v. Association of Pennsylvania State College & University Faculties*, 193 A.3d 486, 495 (Pa. Cmwlth. 2018).

two months after the CBA was signed, Highmark purchased Blue Cross and became the healthcare insurance provider for the District and Association. (Award at 3, 8-9.) The District did not provide notice to the Association of the change in providers. (Award at 8-9.)

At the time of the dispute Susan Ludwikowski (Ludwikowski) was employed as a science teacher at Riverside School District. For twenty years, Ms. Ludwikowski had been receiving weekly psychiatric therapy sessions with the same out-of-network therapist. Prior to July 2016, Ms. Ludwikowski's out-of-pocket expense each week was $51.80 with Blue Cross; however, after Highmark became her insurance provider her out-of-pocket expense was $100.48 for the same service. This was a result of a decrease in the Allowable Charge for Ms. Ludwikowski's weekly therapy from $154.00 with Blue Cross to $93.15 with Highmark. (Award at 8.)

On April 5, 2017, the Association, on behalf of Ms. Ludwikowski, filed a grievance challenging the new health insurance. The District denied the grievance and the parties proceeded to arbitration on November 5, 2019.

### Arbitrator's Award

At the outset, the arbitrator considered the arbitrability of the grievance. (Reproduced Record (R.R.) at 172a.) To decide whether the grievance was arbitrable, the arbitrator considered the text of the CBA and the underlying grievance. Pertinent sections of the CBA include:

> Article II, (B)(1): Insurance Program – The District agrees to pay the premium, for each member of the bargaining unit on the active payroll and their dependents, for a group Hospital and Medical Service Plan in the form of a Blue Cross/Blue Shield of Northeastern Pennsylvania PPO (Professional Provider Organization) Plan which will have unlimited coverage for In-Network (Preferred) and a maximum coverage of One Million ($1,000,000) Dollars for Out of Network (Non-Preferred). The plan summary for such services is attached hereto and made a part hereof.

2

. . . .

> Article II, (B)(5): Carrier – The District shall have the right to select and change the insurance carrier or carriers provided there are no decreases in benefits. The District will notify the Association of any known tentative or actual alteration or modification of any insurance program under consideration or effected by the carrier.

. . . .

> Article II, (B)(10): Grievance of Insurance Benefits – A grievance arising out of a claim for insurance benefits shall not be arbitrable if the dispute involves a claim that the carrier is not providing contracted benefits; recourse in such an event will be with the carrier and through the courts, if necessary.

(R.R at 19a-20a.)

The arbitrator specifically relied upon Article II, Section (B)(10) and stated, "the District's unilateral change from Blue Cross to Highmark violates specific, clear, and unambiguous language in the CBA which governs how and under what conditions a change in providers can be made." *Id.* According to the arbitrator, "it would be a stretch to hide behind that language to bar certain insurance benefit grievances from being adjudicated through the grievance procedure, especially if the allegation is that the District violated the [CBA] causing a dispute in the delivery of benefits." *Id.* Thus, the arbitrator concluded the alleged violations in the instant grievance are arbitrable and not barred under Article II, Section (B)(10), and subsequently, addressed the merits of the case. (R.R. at 173a.) The arbitrator framed the issue before him as follows:

> Did the Riverside School District violate the [CBA] by accepting a change in healthcare providers? If so, what shall be the remedy?

(Award at 3.)

3

The arbitrator noted the CBA explicitly lists Blue Cross as the healthcare insurance provider, which the parties negotiated and agreed to during bargaining, Blue Cross's Plan Summary is made a part of and incorporated into the CBA in Article II, Section (B)(1), and the District then accepted a change in health insurance carriers after the CBA was negotiated. (Award at 6-7.) The arbitrator observed that Article II, Section (B)(5) clearly states two criteria that must be met in the event of a change in insurance carriers. (Award at 7.) First, the District "must ensure that such a change in insurance carriers will not reduce any benefit levels that the negotiated plan provided for[,] and second, the District is obligated to notify the Association of any perceived or actual change in carriers, as evidenced by the word 'will' in the second sentence." *Id.*

The arbitrator then reviewed the evidence to determine if the change in health insurance carriers had decreased healthcare benefits. The arbitrator noted that Highmark's Allowable Charge for out-of-network mental health services is significantly lower than Blue Cross's Allowable Charge. (Award at 8.) Mr. William Butler of Mergo Benefits Company testified on behalf of the District and conceded that the plan allowance cover charge for out-of-network mental health services is lower under Highmark's Plan Summary, which caused an increase in out-of-pocket expenses for employees using the medical service. (Award at 7-8.) Thus, the arbitrator concluded this was a decrease in employee benefits and a breach of the CBA. *Id.*

Moreover, the arbitrator examined Article II, Section (B)(5) of the CBA, which required that the District notify the Association of "any known tentative or actual alteration or modification of any insurance program under consideration or effected by the carrier." (Award at 8.) The arbitrator found that this language required the District to notify the Association of any changes in the negotiated healthcare plan, whether the District sought to make these changes from Blue Cross to Highmark or not. *Id.* Further, the arbitrator noted that "a total change in health[]care provider" qualified as a "major modification of the insurance program," which required the District to give

4

notice to the Association. *Id.* The arbitrator found no notice was provided to the Association. *Id.*

On April 15, 2020, the arbitrator sustained in part the grievance and made the grievant, Ms. Ludwikowski, "whole" for the out-of-pocket expenses from April 5, 2017, to April 15, 2020, that she suffered due to the change in insurance plans. (Award at 9-10.)

## Trial Court's Decision

On May 13, 2020, the District filed a petition to vacate the Award with the trial court. On February 3, 2021, after a hearing and briefing, the trial court granted the petition to vacate the Award on the basis that the underlying issue of the grievance was not arbitrable. (R.R. at 182a-183a.) The trial court disagreed with the arbitrator's characterization of the grievance as a violation of the CBA due to the decrease in healthcare coverage without notice. (R.R. at 182a.) The trial court re-examined the evidence and determined the underlying dispute involved "a claim by Ms. Ludwikowski that the insurance carrier [Highmark] is not providing benefits." (R.R. at 182a-183a.) The trial court found there was no change or reduction in the health insurance benefits when Blue Cross changed to Highmark. *Id.* The trial court relied heavily upon the testimony of Mr. Butler, who stated there were no changes or reductions to insurance benefits when Blue Cross changed to Highmark. (R.R. at 182a.) The trial court labeled Highmark as "a successor in interest to the District's contract with [Blue Cross]." *Id.*

Further, the trial court noted Ms. Ludwikowski had "various channels with the insurance carrier with which she could seek recourse" and could also "avail herself of her rights in federal and state courts." (R.R at 178a, 182a-183a.) The trial court concluded that "[t]he present [CBA] contains clear and unequivocal language that should have provided the arbitrator with a basis for deciding that the parties agreed not

5

to arbitrate this dispute," and thus, granted the District's petition to vacate the Award. (R.R. at 183a.) Subsequently, the Association appealed to this Court.

## Analysis

On appeal, the Association advances fives arguments; however, these arguments can be summarily reviewed by addressing whether the trial court applied the applicable standard of judicial review to determine whether a case should be submitted for arbitration in the first place.[2] Based on our review, we are compelled to reverse the trial court's order vacating the Award on this basis.

We begin with a brief survey of this Court's narrow standard of review of a grievance arbitration award under the Public Employe Relations Act.[3] Our Supreme Court has held that a reviewing court must accord great deference to the award of an arbitrator chosen by the parties. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). In the vast majority of cases, an arbitrator's decision is final and binding upon the parties. *Id.* The narrow exception to this finality doctrine is the so-called "essence test." *Id.* In applying the essence test, a reviewing court conducts the following two-prong analysis:

> First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the

---

[2] Specifically, the issues raised by the Association are: (1) whether the trial court properly applied the applicable standard of judicial review for arbitration awards, which is the essence test; (2) whether the essence test applies to the issue of arbitrability; (3) whether the trial court exceeded its authority by making factual findings contrary to the arbitrator's findings; (4) whether the trial court exceeded its authority by imposing its own interpretation of the CBA; and (5) whether the trial court failed to address all the issues of the CBA dispute that were raised at the arbitration hearing and addressed by the Award.

[3] Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

6

> collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*Id.* In conducting this analysis, a reviewing court does not review the merits of an arbitration award under a *de novo* standard of review. *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007). Indeed, a court may not disturb an award even if it is "manifestly unreasonable." *Id.* Instead, a reviewing court may only vacate an arbitrator's award if it violates the essence test. *Marion Center Area School District v. Marion Center Area Education Association*, 982 A.2d 1041, 1045 (Pa. Cmwlth. 2009).

At the outset, the arbitrator addressed whether the issue of the underlying grievance was arbitrable. It is well established that the arbitrator has sole jurisdiction to decide the arbitrability of an issue in the first instance. *Wattsburg Area School District v. Wattsburg Educational Association PSEA/NEA*, 884 A.2d 934, 937 (Pa. Cmwlth. 2005). Furthermore, the broad deference given to the arbitrator's decision applies equally to his determinations regarding the arbitrability of the subject matter of the grievance. *Scranton Federation of Teachers, Local 1147 v. Scranton School District,* 444 A.2d 1144, 1147 (Pa. 1982). *See also County of Allegheny v. Allegheny County Prison Employees Independent Union,* 381 A.2d 849 (Pa. 1977). Moreover, when reviewing the issue of arbitrability, the trial court could inquire only whether the arbitrator's conclusion is "completely unsupported by the principles of contract construction." *See Williamsport Area School District v. Williamsport Education Association*, 686 A.2d 885, 887 (Pa. Cmwlth. 1996) (citing *Pennsylvania Turnpike Commission v. Teamsters Local Union No. 250*, 639 A.2d 855, 972 (Pa. Cmwlth. 1994)).

Here, the arbitrator concluded that the Association's grievance is premised on the District's change in healthcare insurance providers in violation of Article II, Section (B)(5) of the CBA. (Award at 6.) The District argues that arbitration is barred by Article II, Section (B)(10). Indeed, the plain language of Section (B)(10) provides that "[a] grievance arising out of a claim for insurance benefits shall not be arbitrable if the dispute involves a claim that the carrier is not providing contracted benefits. . . ." (R.R. at 19a-20a.) However, the arbitrator determined Article II, Section (B)(5) includes a two-step process should the District change healthcare insurance providers, and the Blue Cross Plan Summary was incorporated into the CBA. (Award at 7.) Under Article II, Section (B)(5), the District has the right to change healthcare insurance providers but must ensure there is no decrease in benefits. *Id.* The District must provide notice to the Association of any perceived or actual changes to the healthcare insurance provider (whether or not the District sought to make the changes). *Id.* In this case, the arbitrator found that the Association's grievance is premised on Ms. Ludwikowski's increase in her out-of-pocket expenses for her weekly therapy session. (Award at 6.) Based on these provisions of the CBA, we cannot conclude that the trial court had legal justification to reverse the arbitrator's conclusion that the "alleged violations outlined in the grievance and argued at the arbitration hearing are separate and apart from the issue excluded from arbitration in Article II, Section (B)(10)." (Award at 7.)

When reviewing the Award, the trial court exceeded its limited standard of review and erroneously rejected the arbitrator's determination that the issue was arbitrable and substituted its own interpretation of the underlying grievance. The trial court determined that the arbitrator mischaracterized the matter "as a general dispute of the collective bargaining unit members' receiving less than the contracted overall benefit package." (Award at 6.) The trial court then substituted its own determination that the underlying grievance "involves a claim by Ms. Ludwikowski that the insurance

8

carrier is not providing benefits." (R.R. at 182a-183a.) The trial court concluded Article II, Section (B)(10) provides for this exact grievance claim and directed the grievant to the insurance carrier or the courts. *Id.* Further, the trial court cites to Mr. Butler's testimony of the avenues by which Ms. Ludwikowski could have sought relief, which are not located in the Award. *Id.* It is of no moment that the trial court would have found differently in determining whether the case was arbitrable. The arbitrator's decision and interpretation are what the parties bargained for and to which they agreed to be bound. *Ridley School District v. Ridley Education Association*, 479 A.2d 641 (Pa. Cmwlth. 1984). A reviewing court's standard of review is limited. *Westmoreland*, 939 A.2d at 863. When the trial court re-assessed the testimony of Mr. Butler and made its own findings of fact, it exceeded the authority reviewing courts have in arbitral review and improperly acted as a "super-arbitrator."

Accordingly, we conclude that the trial court erred in disturbing the arbitrator's determination that the grievance was arbitrable and had foundation in the CBA. Thus, the underlying issue of the grievance is as the arbitrator stated, *i.e.*, whether the District violated the CBA by accepting a change in healthcare providers, and it is an issue that the trial court should have addressed under the above-mentioned "essence test," but never did. Because the District's assertions that the Award itself contravene the essence test were not addressed below, we decline to address them here on appeal and remand the matter to the trial court with specific instructions to consider and dispose of the District's arguments that the Award violates the tenets of the "essence test." For these reasons, we reverse the trial court's order and remand the matter to the trial court for further proceedings.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Wallace did not participate in the decision for this case.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Riverside School District        :
                                   :
           v.                    :
                                   :    No. 159 C.D. 2021
Riverside Educational Association    :
REA-PSEA-NEA,                   :
               Appellant     :

## ***ORDER***

       AND NOW, this 1ˢᵗ day of August, 2022, the order of the Court of Common Pleas of Lackawanna County dated February 3, 2021, is REVERSED, and this matter is REMANDED to the trial court to address the merits of the arbitration award. Jurisdiction relinquished.

 

                              _____
                              PATRICIA A. McCULLOUGH, Judge