IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Helt,                                    :
                        Petitioner              :
                                                :
            v.                                  :
                                                :
Workers' Compensation Appeal                    :
Board (County of Allegheny and                  :
UPMC Benefit Management Services,:
Inc.),                                          :   Nos. 2636 & 2637 C.D. 2015
                        Respondents             :   Submitted: September 30, 2016


BEFORE:     HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE JULIA K. HEARTHWAY, Judge
            HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                          FILED: October 26, 2016


            Daniel Helt (Claimant) petitions for review of the orders of the
Workers' Compensation Appeal Board (Board) affirming the Workers'
Compensation Judge's (WCJ) decision denying Claimant's claim petition alleging
a work injury of September 2, 2008; granting the County of Allegheny's
(Employer) termination petition relating to the September 2, 2008 work injury,
dismissing as moot Employer's second termination petition; denying Claimant's
two employee challenges related to his July 16, 1996 work injury; and granting in
part Employer's suspension petition relating to Claimant's July 16, 1996 work
injury. For the reasons that follow, we affirm.

## I.

On July 16, 1996, Claimant sustained an injury while in the course of his employment as a corrections officer at the Allegheny County Jail (Jail) when he was assaulted by an inmate.  Employer issued a Notice of Compensation Payable (NCP) acknowledging as compensable an injury described as a "fractured right leg, back, right hand."  (Board's November 20, 2015 Opinion at 1.)  Claimant received a full salary in lieu of compensation while he was temporarily disabled pursuant to the Jail Guards Act.[1]  A Notification of Suspension was issued effective August 20, 2001, when Claimant returned to work with no loss of earnings.

Claimant sustained another work-related injury on September 2, 2008, when he was again assaulted by an inmate.  He continued to work in some capacity for a period of time after this incident.  Employer issued a medical-only Notice of Temporary Compensation Payable dated September 17, 2008, acknowledging that Claimant sustained a contusion to the right knee.  On November 21, 2008, Employer issued a medical-only NCP acknowledging the injury as a "R[ight] knee contusion, cervical/lumbar strain, resolved."  (Reproduced Record (R.R.) at 15a.)

Pursuant to a Supplemental Agreement issued by Employer on March 23, 2009, Claimant's total disability benefits were reinstated on November 11, 2008, when Claimant became disabled again.  His benefits were suspended as of November 12, 2008, when he returned to work without a wage loss.  Claimant's

---

[1] Article XV of the Second Class County Code, Act of July 28, 1953, P.L. 723, 16 P.S. § 4531.

disability recurred on December 29, 2008, and he again received full salary benefits pursuant to the Jail Guards Act.

On September 2, 2011, Claimant filed a claim petition alleging that he sustained a work-related injury on September 2, 2008, in the nature of "Injuries to the Low Back (including nerve damage) and right knee/leg; including aggravation of pre-existing work-related conditions." (R.R. at 17a.) On November 3, 2011, Employer filed a Petition to Terminate and Suspend Compensation Benefits relative to Claimant's 2008 work injury. Employer averred that Claimant had fully recovered from his 2008 injury as of May 18, 2011, per the medical opinion of D. Kelly Agnew, M.D. (Dr. Agnew). Employer also claimed that Claimant was capable of returning to full-duty work based upon his 2008 injury, but had restrictions due to his 1996 injury.

Employer then filed a Petition to Suspend Compensation Benefits as of October 24, 2011, relative to Claimant's 1996 work injury. In this petition, Employer asserted that Claimant was requested to return to work in a sedentary-duty capacity and failed to do so in good faith. Employer requested supersedeas. On August 11, 2012, Employer filed a second Petition to Suspend Compensation Benefits relative to Claimant's 1996 work injury. This second petition asserted that Employer offered work within Claimant's physical restrictions and that he failed to return to work in good faith.

On August 16, 2012, Employer filed another Petition to Terminate relative to Claimant's 2008 work injury. This petition alleged that Claimant had

3

fully recovered from his 2008 injury as of the June 20, 2012 examination by William D. Abraham, M.D. (Dr. Abraham). Employer again requested supersedeas.

Claimant filed answers to the termination and suspension petitions, asserting that he remained totally disabled and entitled to total disability benefits under the Workers' Compensation Act[2] (Act) and the Jail Guards Act. Claimant also asserted that he had undergone additional surgery to treat his work-related injuries.

Employer issued two Notifications of Suspension or Modification dated June 6, 2013, and July 3, 2013, respectively. The first notification modified Claimant's benefits to temporary partial disability as of June 3, 2013, and the second suspended Claimant's entitlement to wage loss benefits as of June 30, 2013. Claimant filed Employee Challenges to these notifications, alleging that he should be paid based on the September 2, 2008 injury as opposed to the July 16, 1996 injury.

With consent of the parties, all of the petitions and challenges were consolidated before the WCJ for the purposes of hearings and decision.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

4

## II.

Before the WCJ, Claimant testified that he began working as a corrections officer for Employer on September 11, 1995. His 1996 injury occurred when he was crushed by officers and an inmate as he was bent over trying to secure an inmate who was high on PCP. He testified that his injury was so severe that doctors considered removing his leg.

As for the September 2, 2008 injury, Claimant testified that he escorted an inmate back to his cell and when he went to open the cell door, the inmate spun around and started punching him. When Claimant shoved the inmate into the wall, he felt his right knee lock up. Claimant then grabbed the inmate and the two went to the ground, with the inmate falling on top of Claimant on the concrete floor. Claimant felt a sharp pain in his low back. After approximately ten seconds, other officers appeared and were able to get the inmate off Claimant. He sought treatment with Concentra after the incident and its staff took x-rays and examined him. He did not disagree with the records from Concentra that he was released to modified-duty work following his initial visit and that he was released back to full-duty work on September 8, 2008.

Claimant then went to see Dr. DeMeo, who put him in therapy. Dr. DeMeo referred Claimant to three of his partners, including Gregory S. Lavigne, M.D. (Dr. Lavigne). Arthroscopic surgery was performed on Claimant's right knee in January 2009, and Dr. Lavigne performed a titanium knee replacement in August 2010.

5

Claimant testified that he still had pain and "popping" in his knee after surgery, and that his back pain had gotten worse over time. He had daily pain, including hip and back pain, his legs would swell, and he experienced incontinence. As of the July 22, 2013 hearing, Claimant was using Oxycodone, Celebrex, Lyrica, Amitriptyline and Vesicare, and was utilizing a TENS (transcutaneous electrical nerve stimulation) unit. He noted that he experienced a problem controlling his bladder and bowels when his back pain was really bad.

Claimant admitted that on June 3, 2013, he returned to modified-duty work with Employer as a switchboard operator, with the additional task of sorting mail. Employer asked Claimant if he was all right sorting mail, and he agreed it was not causing him any problems. He worked four hours per day for approximately four weeks and then increased to six hours per day. Claimant felt that he could attempt to perform the position eight hours per day. He noticed some leg swelling, but was able to put his leg up while working and was able to get up and down repeatedly when he became uncomfortable. Claimant agreed that, as per Jail policy, he was only permitted to bring the medication into the facility that he was going to use during that shift.

Claimant submitted the deposition testimony of Dr. Lavigne, a Board certified orthopedic surgeon who first saw Claimant on June 8, 2010. After an evaluation, he diagnosed Claimant as having severe grade IV patellofemoral arthrosis, which was symptomatic. Claimant was presented with his treatment options and elected to undergo a total knee replacement on August 30, 2010.

6

Dr. Lavigne admitted that he did not have access to any of Claimant's medical records pre-dating the evaluations performed on November 3, 2008. He admitted that when he first started treating Claimant, he was not concerned with causation issues, and he did not request any records contemporaneous with the 2008 work injury. While he had a July 15, 2011 report authored by Dr. Agnew which documented Claimant's prior medical records, Dr. Lavigne did not take into account the initial findings of other doctors following Claimant's 2008 work injury in making his assessment.[3]

Dr. Lavigne testified that Claimant was asymptomatic prior to the 2008 work injury, but he did not know for how long. He was not sure how long after the 2008 work injury Claimant complained of knee pain and was not sure if the injury was of such significance that it caused Claimant to stop working in his full-duty capacity. When asked if the 2008 work injury changed the degenerative condition of Claimant's knee, Dr. Lavigne noted that it was bone-on-bone and the structure of the knee was not changed. Assuming Claimant's 2008 work injury was a knee contusion, Dr. Lavigne admitted that there was no evidence of an ongoing contusion as of the dates he evaluated Claimant.

---

[3] Dr. Lavigne testified that a low back MRI performed on March 8, 2011, showed diffuse disc bulging, bilateral neuroforaminal narrowing, bilateral facet arthropathy, and degenerative settling. Dr. Lavigne opined that Claimant's 2008 work injury could have accelerated his low back degeneration. While Claimant's lower back may have restricted him, Dr. Lavigne stated that he was not evaluating Claimant's lower back. Dr. Lavigne noted that incontinence and bladder issues were not his realm of expertise and he offered no opinion on causation.

Dr. Lavigne indicated that a preponderance of individuals who suffer a tibial plateau fracture will ultimately require a knee replacement. He felt that the 1996 work injury probably caused Claimant's underlying arthritis, and that the 2008 work injury may have caused Claimant's debrided meniscus.

Dr. Lavigne reviewed a number of job descriptions and felt that Claimant could perform the switchboard operator position because he was less likely to have inmate contact or be involved in an altercation. Claimant could be sedentary most of the time, sit or stand at his option, elevate his foot if needed, and use the TENS unit while working. Assuming this job was offered as of October 24, 2011, Dr. Lavigne felt Claimant probably could have performed this job up until he underwent surgery. Dr. Lavigne estimated that, based upon his physical examination findings, Claimant would have been able to return to this position approximately three months after surgery. He also would have been able to perform the switchboard operator position until his next surgery in August 2012.

Lynda Pastor (Pastor), Administrative Officer for the Bureau of Corrections, testified on behalf of Employer. Pastor worked as a liaison between injured Jail employees and UPMC, the Third Party Administrator, and was involved in attempting to have injured workers return to work upon their medical release to do so.

Pastor received Dr. Agnew's Notice of Ability to Return to Work dated September 23, 2011, regarding Claimant. On October 6, 2011, she wrote a letter to Claimant offering him the sedentary, modified-duty position of

8

switchboard operator and provided Claimant with copies of Dr. Agnew's notice and his approval of the position description. Claimant did not return back to work as requested on October 24, 2011. Pastor received a letter from Claimant's counsel asking whether his client would be able to work while taking his medication and if he would be permitted to utilize a cane. Pastor responded by identifying the Jail policy which allowed Claimant to bring into the facility the dosage of medication specified for his particular shift and stating that his request regarding the cane could be accommodated. Pastor noted that she never revoked the switchboard operator position and that this modified-duty job offer remained open and available to Claimant.

After this initial letter was sent to Claimant, Pastor was provided with the opinion of Dr. Abraham along with another Notice of Ability to Return to Work. On July 19, 2012, she wrote Claimant another letter offering him the position of mezzanine visiting officer.[4] This second letter stated that Claimant should contact Employer if he believed he could perform any other jobs approved by Dr. Abraham. Claimant never contacted Employer. The switchboard operator position remained open to Claimant as of this second return-to-work letter.

Pastor then obtained an updated independent medical evaluation (IME) report from Dr. Agnew dated March 20, 2013. Therefore, she sent updated return-to-work letters to Claimant on May 16 and 30, 2013. The first letter offered

---

[4] Upon further review, Pastor realized that the position of mezzanine visiting officer was not approved by the doctor due to the standing and walking requirements.

Claimant the modified-duty position of main lobby control desk, a position approved by Dr. Agnew and which appeared to fall within the restrictions of Dr. Lavigne. This letter also stated that if Claimant or his physician felt he could not perform this particular job or if he was willing to return in the switchboard operator position, he should contact Employer. The second letter indicated that Claimant's treating physician, Dr. Lavigne, testified that Claimant could perform the switchboard operator position. Claimant was instructed to return to work in this position on June 24, 2013. He would begin working four hours per day, and then progress to six hours per day before moving on to an eight-hour shift. The second letter reiterated that Claimant would be permitted to bring his prescriptions into the facility, elevate his leg as needed, sit and stand as needed, and utilize a TENS machine. Claimant returned to work on June 3, 2013, in the modified-duty position of switchboard operator.

On cross-examination, Pastor admitted that the May 30, 2013 return-to-work letter was the first letter advising Claimant that Employer was offering the additional accommodation of a shorter work day. She also agreed that the October 6, 2011 return-to-work letter did not specify that the switchboard operator position would remain open indefinitely. However, she also testified that none of the modified-duty job offers were ever specifically rescinded, and the switchboard operator position was always open and available.

Employer presented the deposition testimony of Dr. Agnew, a Board certified orthopedic surgeon who examined Claimant on May 18, 2011, and March 20, 2013. Dr. Agnew summarized his understanding of Claimant's work injuries.

10

Because Claimant was not willing to provide Dr. Agnew with the details, much of his initial history was derived from his medical records. Dr. Agnew understood that Claimant suffered a tibial plateau fracture and lumbar strain as a result of his 1996 work injury. He stated that such a fracture involves not just one bone but also the knee joint, and almost inevitably leads to post-traumatic degenerative changes. Dr. Agnew noted that Claimant suffered another work injury on September 2, 2008, in that he injured his right knee and low back. Dr. DeMeo performed arthroscopy in January 2009, which confirmed grade IV degeneration (bone-on-bone) and lateral meniscus tearing. Dr. Agnew opined that this would not occur within a few months of the September 2008 work injury, but rather would take years to develop after a significant injury, such as the fracture Claimant suffered in 1996. Dr. Lavigne performed a total knee replacement in August 2010, with a diagnosis of end stage right knee degenerative joint disease, the most significant arthritic condition of the knee.

Following his review of the records and examination of Claimant, Dr. Agnew opined that the 2008 work injury did not cause any type of structural damage and the injuries were no more than sprain/strains or contusions which had gone to resolution. He did not identify any residual injury from the 2008 work injury that would necessitate limitations. He noted that there was no evidence of an ongoing right knee contusion as of Claimant's May 18, 2011 examination nor was there any evidence of ongoing cervical or lumbar strain. He did not feel that the 2008 work injury aggravated the prior right knee condition and testified there were no imaging changes or findings during the arthroscopic surgery which would support an aggravation.

11

Given all of the above, Dr. Agnew opined that Claimant had fully recovered from his 2008 work injury. He further opined that Claimant would never fully recover from the 1996 work injury, and placed significant restrictions upon Claimant given this initial injury and subsequent total knee replacement. He reviewed the job analyses and felt that Claimant could perform the positions of switchboard operator, fire control room, main lobby control desk and security camera monitor. Based upon his evaluations of Claimant, Dr. Agnew felt that Claimant would have been able to perform the switchboard operator position as of October 2011. Claimant would not have been able to perform this position as of his two surgeries in December 2011, but would have been able to perform sedentary-duty work a month after the December 15, 2011 surgery. Claimant also would have been incapable of working this position for a month after his subsequent knee surgery on August 22, 2012. Claimant's medical records indicated that he was not house bound or bed bound during these time frames; therefore, he would have been capable of performing sedentary-duty work.[5]

Employer also presented the deposition testimony of Dr. Abraham, a Board certified orthopedic surgeon who performed an IME of Claimant on June 20, 2012. Dr. Abraham opined that Claimant's medical records from Concentra following his 2008 work injury were fairly benign. Specifically, as of Claimant's September 8, 2008 examination, the little bit of fluid documented in his knee had resolved and his subjective complaints had returned back to baseline. Dr.

---

[5] Dr. Agnew opined that although Claimant had ongoing low back complaints, there was no evidence of progressive degeneration. There was nothing Dr. Agnew could point to which would link Claimant's incontinence with either work injury.

Abraham testified that he did not believe the 2008 work injury caused any type of alteration or aggravation of Claimant's underlying knee condition, and it was his opinion that as of the IME, Claimant had fully recovered from his accepted 2008 work injury.

Dr. Abraham felt that Claimant's total knee replacement was necessitated by significant arthritis which developed over a course of years as a result of his 1996 tibial plateau fracture. Like Dr. Agnew, Dr. Abraham did not feel that Claimant would ever fully recover from his 1996 knee injury, but that he had recovered from his 1996 low back injury. Dr. Abraham felt that Claimant could work, but placed sedentary-duty restrictions on him. He reviewed the job analyses of multiple positions and testified that Claimant could perform the positions of switchboard operator, main lobby control desk, fire control room and security camera monitor.

The WCJ found the testimony of Claimant credible in part and not credible in part. Specifically, Claimant's testimony regarding how his injuries occurred, his return to work from August 2001 through September 2, 2008, and his return to work on June 3, 2013, were found to be credible. However, the WCJ did not find credible Claimant's testimony implying that his current impairment was due to the 2008 work injury or that this injury led to any of his subsequent surgeries. The WCJ noted that causation was a medical question and Claimant's history provided to Dr. Lavigne was different from the history provided to Concentra doctors following the 2008 work injury.

13

The WCJ also found the testimony of Pastor to be credible concerning the job duties of switchboard operator. While Pastor's initial return-to-work letter did not specifically indicate that this position would remain open for Claimant, Pastor credibly noted that Employer was paying Claimant his full salary tax free. Because Employer was paying Claimant the same amount of money whether he worked or stayed at home, there was no reason Employer would not want Claimant back to work performing a valuable function and saving Employer from paying someone else to perform the switchboard operator position.

The WCJ credited the testimony of Dr. Lavigne only to the extent that it did not contradict the credible testimony of Drs. Agnew and Abraham. The WCJ noted that Dr. Lavigne testified that he was concerned with providing care for his patient, not issues of causation. When asked to provide such opinions for the purpose of litigation, Dr. Lavigne did not review records concerning Claimant's initial treatment following his 2008 work injury or any records related to the 1996 work injury. Therefore, Dr. Lavigne was not in as good a position to make causation determinations as were Drs. Agnew and Abraham.

The WCJ found Drs. Agnew and Abraham to be credible, noting that both physicians were of the opinion that Claimant's 2008 work injury was minor and had resolved. There was no evidence of any ongoing lumbar or cervical strains or right knee contusions as of their evaluations of Claimant. Both physicians opined that Claimant's tibial plateau fracture was a serious work injury which resulted in a progressive, degenerative arthritic condition and surgeries.

14

Both also testified that Claimant would need permanent restrictions due to his 1996 work injury.

Given the above, the WCJ found that Claimant failed to meet his burden of demonstrating that he was currently disabled as a result of his 2008 work injury and, therefore, his claim petition was denied. The WCJ found that Claimant's 2008 work injury was not a significant injury and did not aggravate or worsen his underlying degenerative condition, which resulted, instead, from Claimant's 1996 work injury. On the contrary, the WCJ found that Employer had proven Claimant had fully recovered from his 2008 work injury as of the evaluations of Drs. Agnew and Abraham. Therefore, she granted a termination of benefits as of May 18, 2011, concerning Claimant's 2008 work injury. Employer's second petition for termination of benefits relating to the 2008 work injury was dismissed as moot.

The WCJ also found that Employer established that Claimant was physically capable of performing the modified-duty position of switchboard operator beginning October 24, 2011. Therefore, Employer was entitled to a suspension of benefits relative to Claimant's 1996 work injury as of October 24, 2011. Given Claimant's subsequent surgeries and resulting temporary disability, he was found to be entitled to ongoing wage loss benefits from December 2, 2011, through January 25, 2012, and from August 22, 2012, through September 22, 2012.

Finally, the WCJ denied Claimant's challenge petitions as he returned to work on June 3, 2013. Claimant's challenge was based on his contention that he

15

should be considered disabled due to his 2008 work injury, not the 1996 work injury and, therefore, receive a higher average weekly wage. Because the WCJ found that Claimant failed to prove that he was disabled on account of the 2008 work injury and, instead, had fully recovered from this injury, there was no basis for the challenge petitions.

### III.

Claimant appealed to the Board, arguing that the credible evidence of record established that he suffered a significant injury to his right knee on September 2, 2008, that aggravated his pre-existing condition. In the alternative, Claimant argued that he sustained a right knee meniscus tear in 2008. He claimed the opinions of Drs. Agnew and Abraham were legally incompetent because they were unsupported by the medical records and factual history and because they relied solely on hearsay. Claimant also argued that there was not substantial evidence to support the WCJ's conclusion that Employer met its burden of proving that it was entitled to a suspension of benefits based upon the switchboard operator position. Claimant asserted that there was no mention in the initial return-to-work letter that he could use his cane or take his pain medication during work hours. In addition, Claimant argued that the WCJ failed to issue a reasoned decision and that her opinion had a misplaced reliance on an incorrect interpretation of the Jail Guards Act. The Board affirmed the decision of the WCJ and this appeal followed.[6]

---

[6] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether errors of law were committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Roundtree v. Workers' Compensation Appeal Board (City of Philadelphia)*, 116 A.3d 140, 143 n.4 (Pa.
**(Footnote continued on next page…)**

16

**IV.**

**A.**

Claimant's first argument on appeal is that the evidence accepted by the WCJ proves that his 2008 work injury caused a significant aggravation of his pre-existing physical condition as well as additional injuries. Therefore, the WCJ erred in denying his claim petition and granting Employer's termination petition related to the 2008 work injury. In a related argument, Claimant also claims that the opinion testimony of Drs. Agnew and Abraham regarding the issue of causation was not supported by the facts of record and, instead, was based upon unsubstantiated hearsay. These arguments are without merit.

It is well established that a claimant in a workers' compensation case bears the burden of proving all of the elements necessary to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592 (Pa. 1993). This includes proving that the claimant sustained an injury during the course and scope of employment, causation and the length or duration of the claimant's disability. *Coyne v. Workers' Compensation Appeal Board (Villanova University and PMA Group)*, 942 A.2d 939, 945 (Pa. Cmwlth. 2008). "Where the causal connection is not obvious, unequivocal medical testimony is required to

---

**(continued…)**

Cmwlth. 2015). Substantial evidence has been defined as "such relevant evidence as a reasonable person might accept as adequate to support a conclusion. . . . In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." *Waldemeer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted).

establish the causal connections between the work incident and the disability." *Southwest Airlines/Cambridge Integrated Service v. Workers' Compensation Appeal Board (King)*, 985 A.2d 280, 286 (Pa. Cmwlth. 2009) (citation omitted). With respect to a termination petition:

> [T]he employer bears the burden of proof . . . to establish that the work injury has ceased. In a case where the claimant complains of continued pain, this burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. If the WCJ credits this testimony, the termination of benefits is proper.

*Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

Courts within the Commonwealth have distinguished between the phrase "aggravation of a pre-existing condition," which is used to denote a new work-related injury and "recurrence of a prior injury," which denotes an injury directly related to a prior injury. *SKF USA, Inc. v. Workmen's Compensation Appeal Board (Smalls)*, 728 A.2d 385, 387 (Pa. Cmwlth. 1999) (citing *Reliable Foods, Inc. v. Workmen's Compensation Appeal Board (Horrocks)*, 660 A.2d 162, 166 (Pa. Cmwlth. 1995)).

> [I]n order to adjudicate the rights of the parties, we frequently must attribute causation of the current disability to one event or the other. Thus, we have held

18

that if a compensable disability results directly from a prior injury but manifests itself on the occasion of an intervening incident *which does not contribute materially* to the disability, then the claimant has suffered a recurrence. Conversely . . . where the intervening incident *does materially contribute* to the disability, a new injury, or aggravation, has occurred. Whether or not the intervening incident materially contributed to the disability is a question of fact to be determined by the WCJ.

*SKF USA, Inc.*, 728 A.2d at 387-88 (citations omitted) (emphasis in original).

Here, Drs. Agnew and Abraham testified within a reasonable degree of medical certainty that Claimant had fully recovered from his accepted 2008 work-related injury of a right knee contusion and cervical/lumbar strain, and that this injury did not necessitate any limitations on his ability to work. Both physicians testified that the 2008 work injury was not very serious in nature, did not cause any type of structural damage to Claimant's knee, and that Claimant had fully recovered from this work injury as of the date of their examinations. Claimant's medical records from Concentra immediately following the incident support these conclusions.

It is undisputed that Claimant's 1996 injury in the nature of a tibial plateau fracture was a serious work injury. Drs. Agnew and Abraham credibly testified that they did not believe Claimant's 2008 work injury aggravated this prior right knee condition, and Dr. Agnew testified that there were no findings in Claimant's medical records or test results which would support an aggravation. Rather, both physicians testified that Claimant's total knee replacement and

19

subsequent surgeries were necessitated by his 1996 work injury. As Dr. Agnew testified, Claimant's grade IV degeneration in his right knee would not occur within a few months of his 2008 injury but, instead, would take years to develop after a significant injury such as his 1996 tibial plateau fracture. Even Claimant's treating physician, Dr. Lavigne, admitted that the 2008 work injury did not change the structure of Claimant's knee. Drs. Agnew and Abraham both testified that Claimant would never fully recover from his 1996 work injury and they placed significant restrictions upon him due to this injury.

The WCJ found the testimony of Drs. Agnew and Abraham to be credible and credited the testimony of Dr. Lavigne only to the extent that it did not contradict the credible testimony of Drs. Agnew and Abraham. The WCJ explained her credibility determinations, noting that Dr. Lavigne admittedly was not concerned with issues of causation and did not review any records concerning Claimant's 1996 work injury or any records concerning the initial treatment of Claimant's 2008 work injury. As we have stated over and over again, "[t]he WCJ, as the ultimate fact-finder in workers' compensation cases, 'has exclusive province over questions of credibility and evidentiary weight.'" *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). The WCJ is free to accept or reject the testimony of any witness in whole or in part, including a medical witness. *US Airways v. Workmen's Compensation Appeal Board (Johnston)*, 713 A.2d 1192, 1195 (Pa. Cmwlth. 1998). We are bound by these credibility determinations and cannot overturn them on appeal. "Moreover, it is irrelevant

20

whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Verdi*, 78 A.3d at 1238.

As to the issue of aggravation versus recurrence, Claimant relies upon *Mancini's Bakery v. Workmen's Compensation Appeal Board (Leone)*, 625 A.2d 1308 (Pa. Cmwlth. 1993). The claimant in that case, Mr. Leone, suffered from advanced degenerative osteoarthritis and worked as a driver-salesman. Mr. Leone claimed that the constant jumping in and out of his truck every day aggravated his knee replacements. There was medical testimony that Mr. Leone's regular job duties would shorten the lifespan of his knee replacements, hastening the natural process of degeneration; therefore, this Court determined that each day he "worked constituted a 'new' injury in that it further aggravated his condition." *Id.* at 1311. There is absolutely no evidence in this case that Claimant's every day job duties aggravated his 1996 work injury, and the testimony of Dr. Lavigne on the issue of causation was specifically found to be not credible. Likewise, there is no evidence in the record to support Claimant's allegation in his brief to the Court that each day he worked he suffered a "new" knee injury. Therefore, the *Leone* case is distinguishable and Claimant's reliance upon it is misplaced.

Given all of the above, there is ample evidence in the record to support the WCJ's finding that Claimant had fully recovered from his 2008 work injury and that this injury did not cause an aggravation of Claimant's pre-existing condition as it did not materially contribute to Claimant's disability. We discern no error in the determination that, taken as a whole, the testimony of Drs. Agnew

and Abraham was competent. *See City of Philadelphia v. Workers' Compensation Appeal Board (Kriebel)*, 29 A.3d 762, 769-70 (Pa. 2011) (citing *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 803 (Pa. 1985)).

## B.

Claimant also argues that there was not substantial evidence to support the WCJ's determination that Employer met its burden of proving it was entitled to a suspension of benefits relative to Claimant's 1996 work injury. Specifically, Claimant argues that Pastor's return-to-work letter dated October 6, 2011, regarding the switchboard operator position failed to mention that Claimant could use his cane while working in this position or that he would be permitted to take his narcotic pain medication during work hours.

An employer who seeks to suspend a claimant's benefits on the basis that the claimant has recovered some or all of his ability must meet the four prong standard announced in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 532 A.2d 374, 380 (Pa. 1987).[7, 8] If, as in the current case:

---

[7] The *Kachinski* standard is as follows:

> 1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

> 2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the

**(Footnote continued on next page…)**

the modification petition is based upon the employer's assertion that it offered a medically approved and available position to claimant, then the employer is not required to produce medical evidence of a change in condition. Rather, the employer must only show that the position is within claimant's physical capabilities and 'actually available'; that is, the offered position receives medical clearance, and the claimant is advised of that clearance while the job is still open.

*Dow v. Workers' Compensation Appeal Board (Household Finance Co.)*, 768 A.2d 1221, 1228 (Pa. Cmwlth. 2001) (citation and emphasis omitted).

Here, Employer first offered Claimant the sedentary, modified-duty position of switchboard operator via Pastor's October 6, 2011 return-to-work letter. Along with the letter, Pastor provided Claimant with copies of Dr. Agnew's Notice of Ability to Return to Work and his approval of the switchboard operator position

---

**(continued…)**

occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski*, 532 A.2d at 380.

[8] This Court has held that the *Kachinski* standard applies to job offers that are required to be made by an employer under the amended provisions of Section 306(b)(2) of the Act, 77 P.S. § 512.

description. Claimant is correct that the October 6, 2011 return-to-work letter did not specifically state that he could use a cane in this position or that he would be permitted to work while taking his prescription pain medication. However, after receiving a letter from Claimant's counsel inquiring about these issues, Pastor responded by stating that Claimant's request to use a cane could be accommodated. She also provided Claimant with the Jail policy allowing him to bring his daily medication into the facility. Moreover, "an employer need not specify every aspect of every proposed job, but it d[oes] have to provide medical evidence describing the claimant's capabilities, vocational evidence classifying the level of exertion and a basic description of the job in question." *Hoover v. Workers' Compensation Appeal Board (Harris Masonry, Inc.)*, 783 A.2d 886, 890 (Pa. Cmwlth. 2001) (citing *Kachinski*). That is precisely what Employer did in this case.[9]

There is no evidence that Claimant followed up on the switchboard operator position after receiving the response from Pastor, and it is undisputed that he did not return to work for Employer until June 3, 2013. Pastor credibly testified that the switchboard operator position always remained open and available to Claimant and that she never specifically revoked this job offer. In addition, Pastor's subsequent letters to Claimant all indicated that he should contact her if he believed he could perform *any* of the jobs previously approved by a physician,

---

[9] Claimant's reliance upon *Darrall v. Workers' Compensation Appeal Board (H.J. Heinz Company)*, 792 A.2d 706 (Pa. Cmwlth. 2002), is misplaced as the employer in that case never responded to inquiries from claimant's counsel regarding the specifics of the job offer, such as the start date.

which would necessarily include the switchboard operator position. Therefore, we discern no error in the WCJ's determination that Claimant failed to return to work in good faith at the switchboard operator position.

## C.

Finally, Claimant argues that the WCJ erred in failing to issue a reasoned decision because she relied upon an incorrect interpretation of the Jail Guards Act. Section 422(a) of the Act, 77 P.S. § 834, requires that "[w]hen faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence." A decision is "reasoned" if it allows for adequate appellate review without further elucidation. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

We discern no error in the WCJ's determination. The WCJ summarized the conflicting testimony of the medical witnesses, made credibility determinations, and provided adequate reasons for those credibility determinations. Moreover, the WCJ did not rely upon the Jail Guards Act in determining Claimant's entitlement to benefits, but merely mentioned that Claimant was receiving full salary continuation benefits under the Jail Guards Act when he was off work for his injuries.[10]

---

[10] Any remaining issues Claimant attempts to raise in his petitions for review or brief to this Court have been waived as they were not raised before the WCJ and the Board. *Budd Baer, Inc. v. Workers' Compensation Appeal Board (Butcher)*, 892 A.2d 64, 67 (Pa. Cmwlth. 2006).

Accordingly, the orders of the Board are affirmed.


_____
DAN PELLEGRINI, Senior Judge



Judge Wojcik did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Helt,                                    :
                    Petitioner                   :
                                                 :
          v.                                     :
                                                 :
Workers' Compensation Appeal                     :
Board (County of Allegheny and                   :
UPMC Benefit Management Services,:
Inc.),                                           :
                    Respondents      :   Nos. 2636 & 2637 C.D. 2015

# **O R D E R**

AND NOW, this 26<u>th</u> day of <u>October</u>, 2016, the Orders of the Workers' Compensation Appeal Board at Nos. A14-0772 and A14-0771 are affirmed.

_____
DAN PELLEGRINI, Senior Judge